**96 So.2d 565**

**STATE of Louisiana ex rel. Andrew Stirling ALBRITTON**

**v.**

**Lucille May GRACE, Register of State Land Office, et al.**

No. 43164.

June 28, 1957.

Jack P. F. Gremillion, Atty. Gen., George M. Ponder, 1st Asst. Atty. Gen., and John L. Madden, Sp. Asst. Atty. Gen., for defendants-appellants.

Liskow & Lewis, Lake Charles, for plaintiff-appellee.

HAWTHORNE, Justice.

This is a mandamus proceeding by Andrew Stirling Albritton to compel the Register of the State Land Office to issue, and the Governor to sign, a patent to the SE¼ of NE¼, Section 14 (West of Bayou), Township 14 South, Range 6 East. There was judgment for relator in accordance with his prayer, and respondents have appealed.[1]

According to this record, the State of Louisiana in 1858 sold to John Laidlaw 320 acres of land at $1.25 per acre, as evidenced by Entry Certificate No. 4481 NSH. These 320 acres, among others, had been selected by the state under the Swamp Land Act of March 2, 1849. It was subsequently ascertained, however, that the State of Louisiana had no title to these 320 acres, either because the United States government had already issued a United States patent for them or because the state had previously sold them. Accordingly in 1919 the Register of the State Land Office, acting under the authority of Act 104 of 1888, issued to the heirs of John Laidlaw or his assigns In Lieu Land Warrant No. 188, which entitled the holder of it to locate upon lands of the State of Louisiana of the same class as those originally bought by Laidlaw.[2]

In 1941 relator, Andrew S. Albritton, became the owner of In Lieu Warrant No. 188, and on April 10, 1953, he made application to the Register of the State Land Office to locate a portion of this land warrant on, and to have issued a patent to, the lands described above. These lands had been selected by the state under the Swamp Land Act of 1849, and title to them is conceded to be in the state. Thus the lands which were sold by the state to John Laidlaw in 1858, but to which the state had no title, and the lands located by Albritton under the in lieu warrant were both lands selected by the state under the Swamp Land Act, and therefore, according to the records of the Register of the State Land Office, they were lands of the same class, and, according to the provisions of Warrant No. 188, "John Laidlaw, his heirs or assigns,

---

1. The lands in controversy are shown to have a value of over $3000.00, and the purpose of this suit is to compel the execution of a patent to the lands, or to compel a conveyance of title to the lands to relator. See State ex rel. Hyams' Heirs v. Grace, 197 La. 428, 1 So.2d 683. We therefore have appellate jurisdiction of this case.

2. Act 104 of 1888 is an act "To authorize the register of the State land office, where it is made to appear that dual or double entries have been made, to cancel the invalid and erroneous entry and to issue a warrant therefor, locatable on other State lands of the same class as was originally entered".

are entitled to have this warrant located upon lands of the State of Louisiana, of the same class as that originally entered under said certificate No. 4481 NSH".

The Register of the State Land Office refused to issue relator the patent for which he applied. The basis of this refusal was that at the time of application the tract which relator was seeking to acquire under the warrant had become potentially valuable for oil, gas, and other minerals, and that it was therefore no longer of the same *class* of lands as those originally sold by the state to Laidlaw.

The trial judge in his excellent reasons for judgment said:

"* * * The facts are not in dispute, and those material to the issue here involved are that prior to relator's application for a patent to the lands in question, the state granted a mineral lease to Shell Oil Company covering these and other state lands. At the date of relator's application a portion of the lands covered thereby was included in a drilling unit, but no drilling operations had been commenced on said unit. Other lands covered by the state's lease to Shell, but not including any portion of the lands covered by relator's application, had been placed in a drilling unit, and oil was being produced therefrom at the date of relator's application, although the producing well is not on state land. Subsequent to the date of relator's application drilling was commenced on the unit which includes a portion

of the lands covered by relator's application, and resulted in the production of oil in paying quantities.

"Defendants refused to issue the patent applied for, their contention being that at the date of relator's application the lands in question had become recognized as being potentially valuable for oil, gas and minerals. This, they contend, took them out of the class of lands subject to location under the land warrant now before the court, [and] hence the patent could not issue because of the provisions of Act 104 of 1888. That is the sole question to be resolved here.

"In the absence of any statute or jurisprudence, defendants' contention might be persuasive. However, we find both a statutory provision and jurisprudence on the question.

"LSA–R.S. 41:98 provides:

" 'The governor may withdraw from sale or entry any of the vacant and unappropriated public lands and lake beds or bottoms belonging to the state, whenever in his opinion, they appear to be more valuable for mineral than for any other purpose, and he may restore to sale or entry all withdrawn lands, at his discretion.'

"This quoted section was formerly section 1 of Act 38 of 1914.

"Defendants contend that the legislature had the quality or value of lands in mind when the word 'class' was used in the act

of 1888. Even if that be true, and on that question this court expresses no opinion, differences of opinion and litigation would seem inevitable on the questions of quality and value. This appears particularly true with reference to highly speculative mineral values. In my opinion the legislature recognized this situation when it enacted Act 38 of 1914. Under the terms of this brief statute, the governor, guided by his opinion only, is authorized to remove state lands from their original class and place them in the class of lands valuable for minerals, withdrawing them from sale or entry. A compliance with the statute eliminates all doubt and difference of opinion, and leaves no basis for litigation. It is further my opinion that by the enactment of this statute the legislature provided the exclusive method by which state lands may be removed from their original class and classed as lands valuable for minerals.

"The case of Douglas v. State, 208 La. 650, 23 So.2d 279, is discussed in the briefs filed herein. In my opinion that decision is authority for the proposition just stated. There no proclamation of the governor in compliance with the provisions of Act 38 of 1914 was in evidence. No such proclamation is in evidence here, and it is not contended that any proclamation was issued.

"In support of their contention defendants have cited several decisions of the United States Supreme Court. These decisions deal with particular federal laws affecting known mineral lands, and with the authority of certain officials of the national government. For these reasons I am of the opinion they have no application to the question here involved.

"Despite the existence of the mineral lease to Shell Oil Company at the date of relator's application, it is my opinion that at that date the lands in question remained in their original class, subject to location under the land warrant here involved.

"It is admitted by relator that the title conveyed to him by the patent sought will be subject to the mineral lease heretofore granted by the state to Shell Oil Company.

"For these reasons it is ordered that the alternative writ of mandamus issued herein be made peremptory ordering and commanding the Register of the State Land Office to issue and the Governor to sign the patent in favor of relator as prayed for."

Under the law and the evidence submitted to the trial judge, we think he decided this case correctly. However, respondents filed in this court after the case had been argued and submitted for our decision a motion seeking to have filed and considered in this court a proclamation issued on March 20, 1917, by Ruffin G. Pleasant, then Governor of the State of Louisiana. To this motion is attached a certified copy of the proclamation, which reads as follows:

"State of Louisiana

"Executive Department

"Baton Rouge

"Executive Order

"Be It Known that, under the authority in me vested by House Concurrent Resolution No. 36, being Act No. 258 of the General Assembly for the year 1912, and by Act No. 38 of the General Assembly for the year 1914, being House Bill No. 124, I hereby withdraw from sale or entry all the vacant and unappropriated public lands of the State of Louisiana, including the beds and bottoms of present and of former bodies of water. The said public lands, withdrawn from sale or entry, do not include redeemable lands forfeited to the State for the non-payment of taxes, lands applied for prior to this date, or lands owned by any political subdivision of the State.

"It is my opinion that the lands hereby withdrawn are more valuable for minerals than for any other purpose.

"The Register of the State Land Office and all others in authority are hereby directed to take notice of this order and act in accordance therewith.

"Given under my hand and seal of office on this the Twentieth (20th) day of March, 1917.

      s/d       "Ruffin G. Pleasant

"(Seal)            "Governor"

■ In this motion respondents request that we give consideration to this proclamation because "this cause was decided adversely to mover solely on the grounds that the land in question was not withdrawn from sale or entry by the Governor. In fact, the Trial Court ruled that the classification of lands as contemplated in Act 104 of 1888 could be changed only by the Governor withdrawing same from sale or entry". They seek to have us consider this proclamation although it was not offered in evidence in the trial court or even mentioned there. Respondents contend here that the proclamation was issued pursuant to an act of the Legislature, and that this court can take judicial cognizance of it. However, they cite no authority in support of this proposition.

Counsel for relator have filed opposition to this motion, setting forth among other objections that the proclamation is not in accordance with the act under which it was purportedly issued, that the proclamation has been set aside by subsequent actions of the Governor on many occasions since 1917, and, further, that the proclamation has never been made effective.

■ Under the provisions of Articles 894 and 895 of our Code of Practice we cannot consider as new evidence the proclamation which respondents seek to file in this court. There appears, however, to be considerable merit in their contention that we

should take judicial cognizance of this proclamation. See 31 C.J.S. Evidence § 41, p. 604; cf. Art. 422, La.Code Crim.Proc., R.S. 15:422.

If we take cognizance of the existence of this proclamation and give it effect, under the facts of this case we should have to reverse the judgment and dismiss relator's suit since by the proclamation the Governor withdrew from sale or entry all vacant and unappropriated public lands of the State of Louisiana with certain exceptions. Relator, however, has raised serious questions as to the legality and effect of this proclamation which we do not think should be decided originally in this court. Accordingly in the interest of justice we have concluded to remand the case to the district court under the authority of Article 906 of the Code of Practice. In that court respondents may file and urge the proclamation as a defense to relator's suit, and relator may urge any defense he may have to the legality and effect of this proclamation, offer evidence, and file any exceptions or pleas he may deem necessary.

For the reasons assigned the judgment appealed from is reversed and set aside, and the case is remanded to the district court for further proceedings consistent with the views here expressed. All costs are to await final determination of the cause.

FOURNET, C. J., concurs in the result.