PROYOSTY, J.
In 1769 the French government made a grant to one Pierre Delille Dupart of a tract of land described as follows :
“Thirty arpents of front to the. river upon the whole depth which shall be found unto Lake Maurepas, of the land where heretofore were two villages of the Colapissas savages.”
John McDonogh acquired all that part of this grant back of a line 80 arpents-from the river, and in his will bequeathed same, together with numerous other tracts of land and a large amount of other property, to the cities of Baltimore and New Orleans for school purposes. In 1857, the two cities made a partition, evidenced by an act in which the above-mentioned tract is described as follows:
“A very large body of land on the left bank of the Mississippi river in the parish of St. James, about sixteen leagues above the city of New Orleans, containing:
“1. One containing about 44,000 arpents commencing at 80 arpents from the Mississippi river in the rear of the plantation now or lately belonging to Dr. Louis Fortier, and running thence between lines to Lake Maurepas and Amite river. See note below.
*876 “Note. The lands described in No. 1 have been divided into several portions:
“1. Commencing at a distance of 80 arpents from the Mississippi river, and extending to the conflicting line of Wm. Conway, embraces an area of 10,118.84 acres.
“2. Commencing at the conflicting! line of Wm. Conway and extending by diverging lines to the Amite river, embracing an area of 47.-811.05 acres.”
Of the two tracts described in this “Note” as 1 and 2, the tract 1 fell to Baltimore in the partition, and the tract 2 to New Orleans.
The cities of Baltimore and New Orleans created each a board of trustees to have charge of the McDonogh bequest. The ordinance of the city of Baltimore creating said board provided that all lands and other properties under said bequest should “pass to and be vested in said board.”
In its annual reports, the said board of trustees for the city of Baltimore carried the said tract of land, which had thus fallen to the city of Baltimore in said partition, as:
“A tract of 10,000 acres, about 55 miles north of New Orleans, on the eastern bank of the Mississippi, situated in the parish of St. James”
—adding the following comment:
“In the report of the former agents, in 1860, they, however, spoke of this tract as ‘low swamp land, probably of no value.’ ”
In 1890, one J. L. Bradford executed a notarial act in favor of Allen Thomas, the material parts of which read as follows:
“Personally came and appeared J. L. Bradford, agent of the city of Baltimore in the sale of the following described property, namely, a certain tract or parcel of land belonging lately to John McDonogh, deceased, but now to the city of Baltimore, containing ten thousand one hundred and eighty (10,180) acres, more or less, the same being situated in the parish of St.James, Southeastern district of Louisiana, in townships 10 and 11, range 5 east, said land having recently been adjudicated to the city of Baltimore by the Department of Interior, and Allen Thomas, purchaser of said lands. Said J. L. Bradford does by these presents graht, bargain, sell, convey, transfer, assign, and set over under all the warranties of law and of substitution and subrogation and all rights, titles, and actions in warranty against any and all antecedent vendors or warrantors, unto the said Allen Thomas,'the said tract or parcel of land belonging lately to John McDonogh, deceased, and now to the city of Baltimore, containing ten thousand one hundred and eighty (10,ISO) acres, more or less, the same being situated in the parish of St. James, Southeastern district of Louisiana, in townships 10 and 11, range 5 east.
“It being agreed and understood that a survey of said land is now being conducted under the direction of the Interior Department of the United States government, and that when such survey is fully completed and approved by the Surveyor General of the United States for Louisiana, full and complete deeds to the same will be executed by the principal of said Bradford, agent, to said Allen Thomas, his heirs or assigns.
“This sale is made and accepted for the price and sum of three dollars ($3.00) per acre, one thousand dollars of which amount have been paid in ready money by the purchaser, who for the balance has furnished his several promissory notes, etc.
“And it is agreed that, should the official survey hereinbefore referred to determine that said parcel of land contains more than ten thousand (10,000) acres, then such surplus shall be paid for in cash at the date of maturity of the first note herein described. Should said survey find said tract of land to contain less than ten thousand (10,000) acres, the amount is to be deducted, at the rate of three dollars ($3.00) per acre, for such deficit from the first note herein described.”
On the same day on which Bradford, agent, thus sold to Thomas, the latter sold to one Carpenter by the same description; and the latter to the Louisiana Land & Lumber Company, still by the same description; and these several purchasers assumed payment of the notes executed by Thomas.
In 1891, the city of Baltimore brought suit in the Circuit Court of the United States for the Eastern District of Louisiana on the said notes against the Louisiana Land & Lumber Company, and obtained a judgment for their amount, less a credit which the defendant company had claimed in its answer, as follows:
“In the survey of the lands, it is found that the tract sold contains only 9,795 acres, instead of 10,000, which entitles this defendant to a credit on the first note for $9,000 of the sum of $015.”
In 1892, the Louisiana Land & Lumber Company executed an act of sale in favor *878 of the defendants to this suit by the following description:
“All that certain tract or parcel. of cypress swamp land, situated in the parish of St. James, in the state of Louisiana, commonly known as the Baltimore tract, and containing nine thousand seven hundred, and ninety-five acres, more or less, situated in townships 10 and ll south, range 5 east, hounded on the south by a line eighty arpents from the Mississippi river in the rear of sections 42 and 43, which front on said river, in said township 11 south, range 5 east, on the east by the upper side line of the land or tract commonly known as the Fontenot, on the north by the lower side line of the Wm. Conway division of the Houmas grant, now the line separating the parishes of Ascension and St. James, and on the west by lands commonly known as those of the heirs of Lobdell and Slidell, and now owned by the present purchasers, and being the same property acquired by vendors herein on the 3d of February, 1890, from E. P. Carpenter, agent, etc., recorded in St. James, La.”
In this last act of sale the land sold is said to be “bounded on the east by the upper line of the land or tract commonly known as the Fontenot” This Fontenot line is some distance within range 6; whereas, in the several acts of sale to Thomas, Carpenter, and the Louisiana Land & Lumber Company, the land sold is said to be situated in range 5. The land in controversy in this suit is the area between said Fontenot line and the line between ranges 5 and 6. Defendants contend that this area was included in the sale to Thomas, and plaintiffs contend that it was not.
The report of the board of trustees of Mc-Donogh fund of the city of Baltimore for the year 1903 recites that the 10,000 acres of swamp lands in the parish of St. James which was acquired in the partition with New Orleans 'has been sold and the price of same fully paid. And the annual reports of said board thereafter do not show any land owned by said fund in the parish of St. James.
[1 ] An exception of no cause of action was filed, in support of which it is contended that, inasmuch as plaintiffs allege that neither party has heretofore been in possession, the suit is neither the petitory nor the possessory action, nor the action in slander of title, and that therefore it can be maintained, if at all, only as being the special action provided for by Act 38, p. 38, of 1908, and that it is not this special action, because defendant is not alleged to be claiming under a recorded title, and the only recorded title alleged in plaintiff consists of two acts which are null on their face. The reference here is to two notarial acts by which the boards of trustees, of the McDonogh fund for the two cities respectively recognize the two cities to be joint owner’s of the land in dispute. These two acts are said to be null, because the two boards 'from which they emanate were without authority to alienate the property in question.
And such is, in fact, the case. And we agree, further, with defendant, that the action is neither petitory, nor possessory, nor in slander of title; but we do not agree that it is not the special action provided for by said Act 38 of 1908.
The object of that act was to provide an action for those cases where two parties are claiming title to land by title of record, and neither can demand anything of the other, but can only call upon the court to pass upon the two titles. Section 1 of the act reads:
“That in all cases where two or more persons lay claim to land by recorded title, and where neither of said claimants are in the actual possession of the land so claimed, either of the claimants may bring suit against one or all the adverse claimants, and for that purpose may join one or more adverse claimants in the same suit as defendants, to have the titles to the land adjudicated upon by the court having jurisdiction oil the property, and it shall not be necessary for the plaintiff to allege or prove possession in himself or the defendants, and this action shall be known as the action to establish title to real estate, and the judge shall decide which of the claimants are the owners of the land in dispute, provided such judgment shall in no case be res adjudicata as to persons not made parties to the suit.”
In the present suit the two litigants “lay claim to land by recorded title,” and “neither *880 is in actual possession,” and plaintiff seeks to “have the title to the land adjudicated upon by the court.”
Defendant’s learned counsel argue that the only “recorded” title the plaintiffs have is the null and void recognitive acts, and that, far from predicating their suit upon the theory that the defendants have a recorded title, the plaintiffs have, on the contrary, predicated it upon the very opposite theory, namely, upon the theory that the defendants have no title at all.
This argument is, in our opinion, merely specious. Both parties are claiming to hold the title which the city of Baltimore derived from McDonogh — defendants claiming that this title was transferred to their author in title, Thomas, by the city of Baltimore, through its agent, Bradford; and the plaintiffs claiming that it was not so transferred. Both are, therefore, laying claim to this land by recorded title.
[2] On the merits, the contention of plaintiff is that the recital in the Bradford-Thomas act of sale as to the land sold being situated in range 5 is conclusive, and that, therefore, no land situated in range 6 can be claimed by defendants. Defendants, on the other hand, contend that the tract of land was sold in its entirety; that it was supposed to lie wholly in range 5, and hence no mention was made of range 6, but that, from the other parts of the description and from the attending circumstances, it is evident that the intention was to sell the tract as a whole; and that the error in the statement as to range is immaterial.
The trial judge adopted that view, and we shall do the same. By repeated decisions of this court reference to the maps of the United States surveys in descriptions of land may be corrected, if ascertained to be erroneous.
“In the description of property according to the maps 'of the United States surveys, an error in the number of the range is immaterial, where the description is otherwise sufficient to identify the property.” Willis v. Ruddock Cypress Co., 108 La. 255, 32 South. 386.
“The court will the more readily recognize and correct errors where the description is by reference to United States surveys.” Penn v. Rodriguez, 115 La. 174, 38 South. 955.
. “Where ...... * it is evident that the intention was to sell the entire real estate of a succession, the whole * * * held to have been conveyed,” notwithstanding the mistake “in describing land.” Chaffe v. Minden Lumber Co., 118 La. 753. 43 South. 397.
“Where, from all the circumstances of the case, it is evident that the intention was to sell the entire real estate of the succession, the whole will he held to have been conveyed, although the sheriff, in describing the land according to the maps of the government surveys, has omitted a part.” 118 La. 753, 43 South. 397.
“If a portion of the description would mislead, it must be read with and controlled by other parts, which explain it; and an error in a description by legal subdivisions may be cured by other descriptive designations of the property in the conveyance, which leave no doubt of the particular tract that was intended to be sold.” Bryan v. Wisner, 44 La. 832, 11 South. 290.
“Where a discrepancy exists in an act of sale between the description according to United States surveys and that by metes and bounds, or by other designations, as to which the parties are less likely to have made a mistake than in their reference to the numbers and lines of the United States surveys, the description by motes and bounds controls.” Ganucheau v. Monnot, 130 La. 463, 58 South. 150.
“Finally, plaintiffs contend that the land adjudicated to the state at the sheriff’s sale is not the same for which suit is now brought. The land sold is the land that was owned by Joseph Desert. This is shown by a plat introduced in evidence by plaintiffs. The description in the deed agrees with the description in the plat in name, boundaries, and acreage, and differs only in that section 25, which is the land in controversy, is put by the deed in township 10, range 8, whereas by the plat it appears to be. in township 10, range 7. That this is an immaterial error is not debatable, in the light of past adjudications of this court bearing on errors in descriptions according to government surveys. Error in the range has time and again been held immaterial, where hy other parts of the description, and even by competent proof aliunde, the land was identified. See Bryan v. Wisner, 44 La. 839, 11 South. 290, and cases there referred to.” Willis v. Ruddock, Cypress Co., 108 La. 258, 32 South. 387.
Reading the description in this case in the light of the attending circumstances, we think the intention to sell the entire tract appears clearly. Said land had come to the city of Baltimore as an entire tract. It had *882 always been dealt with as such. It consists of one continuous cypress swamp. No reason can be assigned why the parties, in making their contract, should have desired to lop off the 357 acres now in controversy. The sale was not being made for a lump price, but by ,the acre; and the parties did not know what the exact acreage was. They did not know that a part of the tract was situated in range 6, but supposed that the whole was in range 5. It had invariably been described as wholly in range 5, when described by .township and range. The city of Baltimore had advertised it for sale as being so situated. It was so described in the documents filed by the cities of Baltimore and New Orleans in certain proceedings in the Land Department a.t Washington in a contest over the title to the lands. It was carried in the annual reports of the board of trustees of the Mc-Donogh fund of the city of Baltimore as a tract of swamp land of little value situated in the parish of St. James, and after full payment had been made of the notes executed by Thomas no more mention of any land situated in the parish of S.t. James was made in said reports. The land in dispute is situated in the parish of St. James, and was thought to be so situated at the .time the said reports of the board of trustees of the McDonogh fund of the city of Baltimore were made.
Plaintiffs produced .the same J. L. Bradford who made the sale to Thomas to show that, when the computation of the acreage came to be made, only the area in range 5 was included. The witness is 82 years old, he was testifying after .twenty years, and his memory is shown to be very bad. In several letters of his of date shortly after this Thomas sale, the property sold is referred to as the 10,000 acres of land, showing that his idea was .that the whole tract had been sold; and in a suit which he brought at that time as attorney for the Louisiana Land & Lumber Company he described the land of the defendants as forming the northeast corner of the parish of S.t. James, which would make it embrace the area in dispute. The sketch, which he says was made for computing this area, is not produced. But, if we accept the figures of the counsel for Baltimore, the data from which this sketch is said to have been made would show an area of 130 acres more than the defendants paid for. If any computation had been made, it would hardly have shown so large a discrepancy as this. The decree in the case speaks of a compromise having been made. Doubtless, the area was fixed by compromise; the parties realizing .that the lines were uncertain, and hence that the area could not be then ascertained with any definiteness.
[3] Some time after the case had been taken under advisement by this court a sup-, plemen.tal brief was filed, in which for the first time the point is made that McDonogh by a clause in his will impressed upon the lands he bequeathed a character of inalienability, and . that, therefore, the Bradford-Thomas sale was a nullity, and that plaintiffs are entitled to recover for that reason, if for no other. We will not pass on that question, for the reason, if for no other, that the present suit is not one to annul the Bradford-Thomas deed, or to have its now alleged nullity declared.
Judgment affirmed, at the cost of appellants.
O’NIELL, J., takes no part.