156 So.2d 431

**Mrs. Geraldine R. LEWIS**

v.

**STATE of Louisiana.**

No. 46440.

June 4, 1963.

Rehearing Denied Oct. 9, 1963.

Jack P. F. Gremillion, Atty. Gen., John L. Madden, Asst. Atty. Gen., Ernest R. Eldred, Special Asst. Atty. Gen., Edward M. Carmouche, Asst. Atty. Gen., for defendant-relator.

G. Allen Kimball, James G. Boyer, Jones, Kimball, Harper, Tête & Wetherill, Lake Charles, for plaintiff-respondent.

SANDERS, Justice.

Mrs. Geraldine R. Lewis instituted this action against the State of Louisiana to establish title to the mineral rights in an 80.90 acre tract of land in Calcasieu Parish, Louisiana.[1] The district court rendered judgment in favor of plaintiff, decreeing her to be the owner of the mineral rights. The Court of Appeal affirmed.[2] We granted certiorari to review the judgment of the Court of Appeal.

The plaintiff's claim to the mineral rights is based upon a chain of title beginning with state patent no. 13,291, dated January 6, 1943, issued by the Governor and Register of the State Land Office to Frank J. Pierson, conveying the tract of land with no express reservation of the mineral rights.

The events leading to the issuance of the patent are these: On March 22, 1862, the state issued to one Phillip Simms patent no. 11,182 for 1137 acres of specifically described land for a cash payment of $1,-421.95. It was later discovered that the state had no title to this land.

In 1942, the subsequent holders of the defective patent made application to the state under Act 104 of 1888 for a land warrant (referred to as a lieu warrant) to be located upon state lands of the same class as those described in the defective patent. The original patent entry was cancelled, and lieu warrant no. 196 was issued to the applicants on June 12, 1942. Frank J. Pierson became the holder of the lieu warrant. On December 30, 1942, Pierson made application under the warrant for a patent on Lots nos. 11 and 14, Section 20, Township 10 South, Range 9 West, Southwestern Land District, Calcasieu Parish, Louisiana. The Governor and Register of the State Land

---

1. The suit against the state was authorized by Act No. 11 of 1959. The action to establish title was governed by LSA–R.S. 13:5062. This statute has since been re-pealed by Act No. 32 of 1960 and replaced by Art. 3651 et seq., LSA–Code of Civil Procedure.

2. 145 So.2d 345. Judge Tate dissented.

Office issued patent no. 13,291 to him on January 6, 1943, in accordance with the application. As previously observed, the patent contained no express reservation of mineral rights. However, it bore the following notation:

"See decision of the Supreme Court reported in [State ex rel. Hyams' Heirs v. Grace] 173 La. 215 [136 So. 569] and reaffirmed by the Supreme Court on March 3, 1941 [197 La. 428, 1 So.2d 683]."

The decisions noted were State ex rel. Hyams' Heirs v. Grace, 173 La. 215, 136 So. 569, and State ex rel. Hyams' Heirs v. Grace, 197 La. 428, 1 So.2d 683, sometimes referred to as the Hyams cases.

The state has filed various exceptions and pleas. However, it has narrowed its defense to the basic contention that the Pierson patent of 1943 conveyed no mineral rights since Article IV, Section 2 of the Louisiana Constitution of 1921, LSA, requires the reservation of the mineral rights on all property sold by the state. The plaintiff contends that the constitutional

provision is not applicable because prior rights had accrued from the defective 1862 patent and Act No. 104 of 1888. Moreover, she contends that the state cannot make a collateral attack on the patent. She pleads the prescription of six years under LSA–R.S. 9:5661 and estoppel.

Article IV, Section 2 of the Louisiana Constitution of 1921 provides:

"In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes."

The prime issue presented is whether the land in controversy is "property sold by the State" within the intendment of this constitutional provision.

The Court of Appeal held that no sale occurred subsequent to 1921, on the theory that the property was delivered in final consummation of the sale made in 1862 and in fulfillment of the obligation then assumed by the state, which was recognized by the enactment of Act No. 104 of 1888 [3] au-

---

3. "Section 1 * * * That the register of the State land office be and he is hereby authorized, where it is made to appear from the records of his office and such other evidence as he may require, that dual or double entries have been made by conflicting claimants, that is to say, that the State has sold and received pay for the same land twice, or has patented and sold lands for which the United States government has already issued United States patents, and to which the United States patentee had a valid and prior title under said United States patent, to cancel the last entry made, provided such entry was made through error, mistake or otherwise, and provided further, the first or former entry is held to be valid.

"Sec. 2 * * * That upon the cancellation of such illegal or erroneous entry, the register is further authorized

thorizing the issuance of lieu warrants. To support its holding, the court cited the decisions of this Court in the two Hyams cases, State ex rel. Hyams' Heirs v. Grace, 173 La. 215, 136 So. 569 and State ex rel. Hyams' Heirs v. Grace, 197 La. 428, 1 So.2d 683.

▇ We cannot agree with this holding. Only two events occurred prior to 1921 to which the plaintiff can point for juridical effect: the issuance of the defective patent of 1862 and the enactment of Act 104 of 1888.

The original 1862 patent covered land that the state did not own. Whatever rights may have accrued to the patentee from the abortive patent did not include the right to a delivery of other land similar to that described in the patent.

Act No. 104 of 1888 did nothing more than authorize the Register of the State Land Office, upon a proper showing by written application, to cancel a defective patent and issue a warrant locatable on other state lands of the same class. When issued, the warrant was assignable. The mere enactment of the statute vested in the holder of

the defective patent no rights in connection with the land here in litigation. To achieve a vesting of rights, the statute contemplates specific action on the part of the patent holder.

The decisions of this Court relied upon by the Court of Appeal are distinguishable. In State ex rel. Hyams' Heirs v. Grace, 173 La. 215, 136 So. 569, the application for the lieu warrant was filed in 1888. However, the lieu warrant was not issued until December 28, 1917. In the meantime, Act No. 131 of 1906 was enacted making an appropriation to refund to the holders of defective patents the price paid. The question there presented was whether the Act affected the rights of the holders of the lieu warrant. The Court held that it did not, on the ground that the rights of the warrant holders had to be determined as if they had actually received the warrant prior to 1906. The application for it had been properly made in 1888 and all that remained to be done was the issuance, a ministerial duty. The Court adopted the view that the Act of 1906 did not supersede or repeal the Act of 1888 but rather provided

---

to issue a warrant to the party or parties, their heirs or legal representatives, whose entries have been declared cancelled, for the full amount which the State has received upon such invalid and cancelled entry.

"Sec. 3 * * * That the warrants issued under Section two of the provisions of this act may be assignable under such rules and regulations as the register may prescribe, and shall be located on the

same class of lands that were originally entered by the party or parties in whose favor they were issued.

"Sec. 4 * * * That the register, before he shall declare any entry cancelled, shall require of the person or persons availing themselves of the provisions of this act, a written application setting forth the reasons and grounds upon which they seek relief. * * *"

an alternative remedy to the patent holder. The application of Article IV, Section 2 of the Constitution was raised for the first time on the motion for rehearing, but the rehearing was refused.

The foregoing decision was reviewed and correctly applied in Douglas v. State, 208 La. 650, 23 So.2d 279.

In State ex rel. Hyams' Heirs v. Grace, 197 La. 428, 1 So.2d 683, the lieu warrant was issued in 1917. Applications to locate it on specified acreage were filed in 1918, 1919, and 1938. The Court held that Article IV, Section 2 of the Constitution of 1921 was not applicable, stating:

"There is no language used therein to indicate that this constitutional provision is to apply to transfers of property *under lieu warrants previously issued* under Act No. 104 of 1888. In our opinion it deals with future sales of land made by the State and there is nothing contained therein to suggest that it was intended to destroy or impair a contract previously entered into by the State. The framers of the Constitution cannot be credited with such an intention." (Italics ours.)

■ In the instant case, no action of any kind was taken by the holders of the defective patent until 1942, when the application for a lieu warrant was made. The issuance of the patent followed in 1943. In our opinion, Article IV, Section 2 of the Constitution of 1921 is clearly applicable to this conveyance. The section is mandatory. It applies to all sales of land, whereby the state divests itself of title, with one exception: the redemption of property adjudicated to the state for taxes. Had it been intended to except sales under Act 104 of 1888, the exception also would have been formally expressed.

Having reached the conclusion that the constitutional provision is applicable, we now address ourselves to the remaining contentions of plaintiff, which the Court of Appeal did not reach.

■ The plaintiff contends that the state cannot make a collateral attack on the patent. In this action to establish title under LSA–R.S. 13:5062, the titles of both plaintiff and the state are at issue.[4] The statute contemplates an adjudication of these titles. Hence, the defense of the action by the state cannot be regarded as a collateral attack upon the patent. We find no merit in this contention.

The plaintiff also asserts that the attack upon the patent is barred by the prescription of six years under LSA–R.S. 9:5661. The statute provides:

"Actions, including those by the State of Louisiana, to annul any patent is-

4. City of Baltimore v. Lutcher, 135 La. 873, 66 So. 253; 13 Tulane Law Review 434, 439.

sued by the state, duly signed by the governor and the register of the state land office, and of record in the state land office, are prescribed by six years, reckoning from the day of the issuance of the patent."

■ The prescriptive statute must yield to the Constitution of 1921, which embodies the clearly stated public policy that mineral rights in all lands sold by the state must be reserved. The state cannot lose by prescription that which it cannot constitutionally alienate.[5]

■ Finally, the plaintiff asserts that the state is estopped from attacking the patent. The cases cited by the plaintiff are inapposite because of factual variations. Estoppel cannot bar an attack by the state on a patent issued in contravention of Article IV, Section 2 of the Constitution.[6]

■ We conclude that the state patent is null, void, and of no effect as to mineral rights and that these rights are owned by the State of Louisiana.

For the reasons assigned, the judgment of the Court of Appeal affirming the judgment of the district court is reversed and set aside; and the State of Louisiana is decreed to be the owner of the mineral rights in and to Lots nos. 11 and 14 of Section 20, Township 10 South, Range 9 West, Louisiana Meridian, located in Calcasieu Parish, Louisiana. All costs of court are assessed against plaintiff-respondent.

---

5. Art. 3497, LSA–Civil Code; State v. New Orleans Land Co., 143 La. 858, 79 So. 515. See also California Co. v. Price, et al., 225 La. 706, 74 So.2d 1 and Realty Operators v. State Mineral Board, 202 La. 398, 12 So.2d 198.

6. 73 C.J.S. Public Lands § 255, p. 899.