SAVOIE, Judge.
Plaintiff, American Lung Association of Louisiana, Inc. (hereinafter referred to as Lung Association) appeals the judgment of the trial court sustaining defendant, State Mineral Board’s, peremptory exception pleading the objection of no cause and/or no right of action. This suit involves a question of the ownership of mineral rights and the ability of the state to alienate them.
In order to fully understand and appreciate the issues involved, a brief review of the events leading to the present litigation is essential. The origin of this controversy began on May 8, 1924. On that day, the Louisiana Anti-Tuberculosis League, predecessor of the American Lung Association of Louisiana, Inc., by act of donation dedicated to the Tuberculosis Commission for the State of Louisiana two tracts of land comprising 371.77 acres. The Tuberculosis Commission was a state agency established in 1912 by legislative enactment for the primary purpose of receiving private donations of land and money to aid in the fight against tuberculosis. The act of donation contained in part the following provisions:
The property so donated is expressly dedicated to the following purpose, to wit: for the location of sanatoria for persons suffering from tuberculosis. To have and to hold the said property unto the said Tuberculosis Commission for the State of Louisiana for the purpose above mentioned, with the understanding and under the condition that in the event that the above described property is not specifically used for the purpose set forth in this Act of Donation within a period of five years from this date, then the said property shall revert to the donor.
In 1974, litigation was initiated by the Lung Association against the State of Louisiana, through the Louisiana Health and Human Resources Administration, successor in interest to the Tuberculosis Commission. Therein, the Lung Association sought revocation of the donation, claiming that the state was no longer using the property as a tuberculosis treatment facility. The trial court found in favor of the state and dismissed the law suit. However, subsequent to that litigation, the state was persuaded to enter into a compromise with the Lung Association concerning the disputed property. On August 28, 1977, the parties signed an act entitled “Compromise Agreement,” followed by the execution of an “Act of Exchange” dated March 30, 1978. By these transactions the state transferred to the Lung Association 221.51 acres of the original 371.77 acres donated to the state, along with a cash payment of $75,000.[1] The state, in its own name, received 150.26 acres of the original donation, upon which the Greenwell Springs hospital facilities are located. However, nowhere in these instruments, nor the original act of donation, was the transfer or reservation of mineral rights mentioned or discussed. Nevertheless, in October of 1979, the Lung Association executed a mineral lease on the 221.51 acres it received, which was duly recorded in the records of the Parish of East Baton Rouge.
In August 1983, the mineral rights, under the acreage received by the Lung Association, were nominated by a private party *345 to the State Mineral Board for public leasing. The staff of the Office of Mineral Resources recommended leasing of the subject tract. Upon protest from the Lung Association, the Mineral Board temporarily withdrew the acreage in question prior to any advertising and requested an opinion from the Attorney General’s office regarding the ownership of the mineral rights. Upon receipt of the opinion in which the Board was advised that the State of Louisiana owned the mineral rights thereunder, the Board proceeded to advertise the acreage for mineral leasing.
The Lung Association then filed the present suit seeking to enjoin the Board from advertising or executing any lease of the minerals on the property, along with a judgment quieting its title. The Board excepted to the suit on the grounds of no cause and/or no right of actions. In its peremptory exception, the Board claimed that the Lung Association had no cause of action since the State of Louisiana is constitutionally prohibited from selling or exchanging mineral rights under land it owns pursuant to Article 9, § 4 of the Louisiana Constitution of 1974. Therefore, the state could not have transferred the mineral rights to the Lung Association. Additionally, the Board asserted that the Lung Association had no right of action in that they had failed to obtain legislative authorization to sue the Board, a state agency, as required by Article 12 § 10 of the Louisiana Constitution of 1974.
Thereafter, both sides filed cross motions for summary judgment on the merits of the case, which were passed after being argued by counsel, and the court took the Board’s exceptions under advisement. Prior to disposition of the case, the Legislature enacted and the Governor signed Act 959 of 1984,[2] which directed the appropriate state *346 official to quit claim to the Lung Association any claim to the minerals under the Lung Association’s portion of the Green-well Springs tract.
After having considered the exceptions, the court held in favor of the Board, sustaining the exception and dismissing the suit. From this ruling the Lung Association has appealed alleging eleven assignments of error. However, we elect not to address these assignments individually because we find there is only one real issue in this case, that being whether or not the state can alienate mineral rights on property by compromise, quitclaim or act of exchange, or by legislative enactment. Stated another way, does Article 9, § 4(A) of the Constitution of 1974 for the state of Louisiana prohibit the alienation of mineral rights on property which has been disposed of by exchange, compromise, quitclaim or legislative enactment, where such alienation does not fall within an exception in the constitution.
We note at the outset that regardless of whether the Louisiana Constitution of 1974 or 1921 is applied, our decision is the same. Article 9 § 4(A) of the Constitution of 1974 reads in pertinent part as follows:
The mineral rights on property sold by the state shall be reserved, except when the owner or person having the right to redeem buys or redeems property sold or adjudicated to the State for taxes.
This language is almost identical to the language used in the Constitution of 1921 Article 4 § 2, which reads in pertinent part as follows:
*347 In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes.
Thus, the first question we must face is whether or not the “Act of Exchange” was a sale within the meaning of the Constitution. In order to address this issue we must determine whether the word “sold” as used in the Constitution includes such other alienations as compromise, quitclaim or exchange. The trial court found that the act of exchange executed between the parties was in fact and in law an exchange and was the legal equivalent of a sale by the state of the property transferred to the Lung Association. As a result, the transfer or alienation of the mineral rights were prohibited by the Constitutional provision reserving them for the state. We agree with these findings.
It is clear that the term “sold” has not been limited in its meaning to only sales, but rather has been given expansive application to mean any type of alienation of mineral rights by the state. In Board of Commissioners of Caddo Levee District v. S.D. Hunter Foundation, 354 So.2d 156, 167 (La.1977), while deciding if acquisitive prescription could run against the levee district, Justice Tate footnoted:
The levee district asks us to overrule Hass as erroneously decided, an issue we do not reach.
It relies upon interpretations of La. Const. of 1921, Art. 4, Section 2, which prevents alienation after 1921 of state mineral interests. Decisions of this court have consistently held that, for purposes of this article, levee districts were a state agency, performing a state function and administering state lands; they were therefore subject to this provision preventing alienation after 1921 of mineral rights owned by the state. See, e.g., State ex rel. Board of Com’rs, etc. v. Grace, 161 La. 1039, 1044, 109 So. 830 (1926), and decisions which recognized alienations only because the effective
date was prior to the 1921 constitutional bar: Lum Chow v. Board of Com’rs, etc., 203 La. 268, 13 So.2d 857 (1943); Schwing Lumber & Shingle Co., Inc. v. Board of Com’rs, etc., 200 La. 1049, 9 So.2d 409 (1942); Standard Oil Co. of Louisiana v. Allison, 196 La. 838, 200 So. 273 (1941); Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701 (1939). See also: Yiannopoulos, 37 La.L.Rev. 317-18 (1977); Hardy, 24 La.L.Rev. 228-29 (1964); Note, 24 La.L.Rev. 416 (1964).
Accordingly, this constitutional prohibition of any alienation of mineral rights by the state after 1921, Lewis v. State, 244 La. 1039, 156 So.2d 431 (1963), likewise bars after 1921 divestiture through acquisitive prescription of a levee district’s mineral interest in (state) lands owned by and administered by it. Shell Oil Co. v. Board of Com’rs of Pontchartrain Dist., 336 So.2d 248 (La. App. 1st Cir.1976), cert. denied 338 So.2d 1156 (La.1956) (“No error of law.”), Noted, 37 La.L.Rev. 317-18 (1977). (Emphasis ours).
Additionally, we look to the case of Shell Oil Company v. Board of Commissioners of Pontchartrain Levee District, wherein this court stated:
With respect to this contention we must hold that the subject Constitutional prohibition against the alienation of minerals by the state equally prohibits the acquisition of these minerals by others by the running of prescription against the state. Notwithstanding the fact that the Legislature has on numerous occasions provided for the running of prescription against the state, these statutes can not be construed to include mineral rights for neither the Legislature not (sic) the courts can permit what the Constitution itself prohibits. 336 So.2d 248, 254 (La.App. 1st Cir.), writ denied, 338 So.2d 1156 (La.1976). (Emphasis ours).
From these cases it is evident that the courts have construed the word sold as found in Art. IX § 4(A) of the 1974 Constitution and Art. 4 § 2 of the 1921 Constitu *348 tion to mean any alienation of the mineral rights. Furthermore, it is well established that constitutional provisions, no less than other laws, should be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. In the event of conflict or inconsistency, provisions should be construed, if possible, to allow each provision to stand and be given effect. State ex rel. Guste v. Board of Commissioners of Orleans Levee District, 456 So.2d 605 (La.1984).
Applying this principle to the Constitutional provisions in question, it is clear that the word “sold” cannot be limited to only situations where an “act of sale” has been passed, but rather should be applicable to any alienation of mineral rights. This is especially true in light of the strong public policy in this state that control of public things should remain in the hands of the state, absent a clear and unambiguous intent to relinquish such control. State ex rel. Guste, supra, at 610.
The only remaining question is whether or not Act 959 of 1984 in any way alters the above decision. It does not. The Constitution is the paramount law, to which all other laws must yield. Board of Commissioners of the Orleans Levee District v. The Department of Natural Resources of the State of Louisiana, 483 So.2d 958 (La.1986). Thus, an act of the legislature cannot prevail over the Constitution.
We note that there have been constitutional exceptions to the prohibition against alienation of mineral rights by the state.[3] However, in the case sub judice, there is no evidence of any constitutional exception which would allow the transfer in question. Accordingly, we hold that absent express constitutional authorization, no alienation of mineral rights by the state may be permitted.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against plaintiff-appellant.
AFFIRMED.

. The state asserts that the cash payment was made for the purpose of obtaining clear and irrevocable title to the tract of land it retained.

. ACT No. 959
House Bill No. 874.
By: Messrs. Fernandez, Ullo and Forster.
AN ACT
To authorize and direct the state of Louisiana through the office of lands and natural resources of the Department of Natural Resources to release and quitclaim unto the American Lung Association of Louisiana, Inc. all the interest of the state in and to the minerals and mineral rights in certain property located in the Odom Tract of East Baton Rouge Parish, and otherwise to provide with respect thereto.
WHEREAS, the American Lung Association of Louisiana, Inc. purchased the property at issue in this controversy in 1922; and
WHEREAS, the association conditionally donated over 400 acres of its 1922 purchase to the state of Louisiana in 1924 to establish a hospital for the treatment of tuberculosis; and
WHEREAS, the state used only a portion of this property for the first Greenwell Springs Tuberculosis Hospital and after discontinuing this use forced the American Lung Association to sue for revocation of the conditional donation of said property; and
WHEREAS, the state in order to terminate the litigation in a manner benefitting it entered into a compromise agreement with the American Lung Association recognizing and quitclaiming all rights, title, or interests to the following described property to the American Lung Association:
That portion of the Greenwell Springs Tract situated in the Parish of East Baton Rouge, State of Louisiana, being the eastern part of Section 49 and that part of Section 48, comprised within Letters "A", “M", “C", "E" in Township 5 South, Range 2 East, Greensburg District, Louisiana, excepting one hundred sixty-one and 88/100(161.88) acres east of road upon which is located the buildings and appurtenances of the Greenwell Springs Tuberculosis Sanitarium but including one hundred twenty-one and 51/100(121.51) acres west of road including Lot One of the Odom Subdivision made by M.P. Robinson in the year 1883 according to a survey and map by R. Swart, Parish Surveyor, dated August 26th, 1910, annexed to an Act of Sale before W. McL. Fayssoux, Notary Public for the Parish of Orleans, by Louis P. Trenchard, et al to John William Barkdull.
Second: Lot 16 of the Odom Tract situated in the Parish of East Baton Rouge, State of Louisiana, containing about One Hundred (100) acres; and
WHEREAS, the American Lung Association, pursuant to the above compromise agreement with the state of Louisiana, recognized and quit-claimed all rights, title, or interests to the following described property to the state of Louisiana:
That portion of the Greenwell Springs Tract situated in the Parish of East Baton Rouge, State of Louisiana, being the eastern part of Section 49 and that part of Section 48, comprised within Letters “A”, "M”, "C", “E” in Township 5 South, Range 2 East, Greensburg District, Louisiana, comprising one hundred sixty-one and 88/100(161.88) acres east of road upon which is located the buildings and appurtenances of the Greenwell Springs Tuberculosis Sanitarium.
*346 WHEREAS, a compromise agreement has been described by the courts as a bilateral contract in which parties adjust their differences for the purpose of preventing or putting an end to a lawsuit in hopes of gaining something balanced by the fear of losing; and
WHEREAS, the resolution of rights including the ownership of minerals through the judicial process does not constitute a sale of minerals as would be prohibited by Article IX, Section 4 of the Louisiana Constitution of 1974; and
WHEREAS, the compromise and settlement of the litigation between the American Lung Association and the state was not a "sale" by the state of Louisiana but was a "recognition” of certain property rights which had been previously perfected in the plaintiff pursuant to the very terms of the donation which transferred the conditional title to the state of Louisiana, that these property rights included all rights, title, or interests to all minerals lying beneath the property in question.
Be it enacted by the Legislature of Louisiana:
Section 1. Pursuant to the need of the state of Louisiana to encourage donations of property for public use, and pursuant to the equities and justice required by all parties entering into compromise, the state of Louisiana hereby declares and confirms that it has no interest in the minerals underlying the property described below; and
Furthermore, the state of Louisiana declares that the Act of Exchange entered into between the state of Louisiana and the American Lung Association almost one year after the compromise and settlement was one to implement the inchoate title established by the terms and conditions of the compromise agreement mentioned hereinabove.
The state of Louisiana through the Department of Natural Resources with the written approval of the governor is hereby directed to release and quitclaim unto the American Lung Association of Louisiana, Inc., any and all right title or interest the state might claim in and to the following described property including all minerals thereunder and mineral rights thereto to wit:
1. That portion of the Greenwell Springs Tract situated in the Parish of East Baton Rouge, State of Louisiana, being the eastern part of Section 49 and that part of Section 48, comprised within letters "A”, “M", “C”, “E” in Township 5 South, Range 2 East, Greensburg District; Louisiana, excepting one hundred sixty-one and 88/100(161.88) acres east of road upon which is located the buildings and appurtenances of the Greenwell Springs Tuberculosis Sanitarium but including one hundred twenty-one and 51/100(121.51) acres west of road including Lot One of the Odom Subdivision made by M.P. Robinson in the year 1883 according to a survey and map by R. Swart, Parish Surveyor, dated August 26, 1910, annexed to an Act of Sale before W. Mcl. Fays-soux, Notary Public for the Parish of Orleans, by Louis P. TGrenchard* et al., to John William Barkdull, and
2. Lot 16 of the Odom Tract situated in the Parish of East Baton Rouge, State of Louisiana, containing about one hundred (100) acres. Approved by the Governor: July 26, 1984. Published in the Official Journal of the State: August 22, 1984.
A true copy:
JAMES H. "Jim” BROWN
Secretary of State

 As it appears in the enrolled bill.

. See: The Board of Commissioners of the Orleans Levee District v. The Department of Natural Resources of the State of Louisiana, 483 So.2d 958 (La.1986).