Dear Mr. Jenkins:
This is in response to your letter of April 18, 1996, requesting an opinion of this office concerning the constitutionality of Act 116 of 1995, providing with respect to the Anacoco-Prairie State Game and Fish Preserve.
As your letter states, the Act purports to transfer all property, both movable and immovable, comprising the Anacoco-Prairie State Game and Fish Preserve from the State of Louisiana to the governing authority of Vernon Parish.
You ask whether this Act constitutes a prohibited donation of state-owned property under Article VII, § 14 of the Louisiana Constitution of 1974. From an inquiry into the underlying facts, we find that other provisions of the Constitution are also applicable, as discussed hereafter.
The terms of Act 116 of 1995, refer to the creation of the Preserve provided in Act 277 of the 1948 Regular Session, making all lands which are part of the Preserve subject to transfer. The 1995 Act specifically recites the same lands which were included in the creation of the Preserve by Act 277 of 1948. Included within those lands are Bayou Anacoco, Bayou Prairie and Prairie Creek, which were navigable bodies of water at the time of state sovereignty, and, thus, their beds and bottoms are owned by the State of Louisiana.
Land title records of the state pertaining to the acquisition of lands constituting the Anacoco-Prairie State Game and Fish Preserve include seventy-two (72) transactions dating from June 27, 1950 — June 30, 1964, totalling some 5,379 acres, in addition to the rivers and streams mentioned above.
With respect to the particular question you have raised concerning the provisions of Article VII, § 14, the legal issue presented is whether the State may legally transfer or dispose of State property without receiving fair and equitable consideration.
Under the provisions of Article VII, § 14(A) of the Louisiana Constitution, except as otherwise provided therein, "the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." Exceptions to this general rule are found in Section 14(B), with respect to the use of public funds for programs of social welfare for the aid and support of the needy; for pension and insurance programs; for public employees; and for the pledge of public funds, credit or property with respect to bonded debt. Section 14(C) also authorizes the State, its political subdivisions and political corporations to engage in cooperative endeavors for a public purpose.
The Louisiana Supreme Court has interpreted the provisions of Article VII, § 14(A) to mean that a violation occurs whenever the State or a political subdivision seek to give up something of value when under no legal obligation to do so. In Town ofBrusly v. West Baton Rouge Parish Police Jury,283 So.2d 288 (1st Cir. 1971), writ denied, 284 So.2d 776 (Sup.Ct. 1973), wherein the Police Jury attempted to reallocate monies from its surplus funds to municipalities within the parish, it was held unconstitutional on the basis that the Police Jury had no legal obligation to provide funding to such municipalities. See also Beard-Pouland, Inc. v. Louisiana Departmentof Highways, 362 F. Supp. 547 (W.D. La. 1973), wherein it was held that the state could not constitutionally pay relocation expenses when the jurisprudence did not permit such and when a constitutional amendment authorizing this action had not gone into effect; and City of Port Allen, Louisiana v.Louisiana Mun. Risk Management Agency, Inc., 439 So.2d 399
(Sup.Ct. 1983), wherein the Supreme Court held as unconstitutional a statute providing that all government subdivisions which are members of an intergovernmental risk management agency are jointly liable for claims not paid by the agency on the basis that one municipality could not constitutionally agree to pay claims of another inasmuch as it would amount to a donation or a gratuity not authorized by law.
It is notable that in the latter case, the legislature had expressly attempted to impose solidary liability on all members of the fund for unpaid claims, and this was just as explicitly held by the Supreme Court to violate the provisions of Article VII, Section 14(A) of the Constitution. The opinions of this office have consistently followed the holdings of these cases, as in Op. Atty. Gen. No. 78-1260 (October 4, 1978); Op. Atty. Gen. No. 87-587 (September 8, 1987); Op. Atty. Gen. No. 89-180 (April 26, 1989); Op. Atty. Gen. No. 90-392 (January 15, 1991); Op. Atty. Gen. No. 90-73 (April 24, 1990); Op. Atty. Gen. No. 93-681 (November 1, 1993); Op. Atty. Gen. No. 93-717 (November 22, 1993); Op. Atty Gen. No. 95-252 (June 30, 1995); Op. Atty. Gen. No. 95-472 (December 4, 1995); Op. Atty. Gen. No. 96-143 (April 8, 1996).
As a consequence of the purported transfer of navigable water bottoms, the provisions of Act 116 of 1995 implicate the provisions of Article IX, § 3 of the Louisiana Constitution of 1974 which provide, in part, that the "legislature shall neither alienate nor authorize the alienation of the bed of a navigable water body * * * ".
As explained below, there are certain acts which are beyond even the authority of the Legislature or the highest state officials, which would include the purported transfer of state-owned navigable water bottoms. Similarly, the provisions of Article IX, § 4 of the Louisiana Constitution require that mineral rights on property sold or transferred by the State be reserved, and no such provision was included in Act 116 of 1995.
Thus, the purported transfer by Act 116 of 1995 of "all property, both movable and immovable" clearly contravenes the provisions of Article IX, § 3 and § 4 with respect to navigable water bottoms and minerals. See Gulf OilCorporation v. State Mineral Board, 317 So.2d 576, at592 (Sup.Ct. 1976); and Lewis v. State, 156 So.2d 431
(Sup.Ct. 1963). Gulf Oil arose out of an oil company instituted concursus proceeding involving the issuance of a land patent by the State to private individuals on lands containing navigable water bottoms, holding that the beds of such navigable waters are owned by the State in its sovereign capacity and cannot be alienated by the State, except through constitutional amendment. Gulf Oil, supra, 589-591.
Therefore, under the cited jurisprudence of the courts of this State, it is our opinion that the provisions of Act 116 of 1995, insofar as they purport to transfer "all property, both movable and immovable" comprising the Anacoco-Prairie State Game and Fish Preserve in Vernon Parish owned by the State of Louisiana to the governing authority for the Parish of Vernon, particularly insofar as they may be construed to include navigable waters and minerals, are null and void as being in direct contravention of Article VII, § 14 and Article IX, § 3 and § 4 of the Louisiana Constitution of 1974. The provisions of the Act provide absolutely no compensation to the State for the transfer and certainly constitute the prohibited transfer of the funds, credit, property or things of value of the State contemplated by the cited constitutional provisions, as held by our Courts.
With respect to certain other constitutional provisions, we have found Act 116 of 1995 to be in compliance, as in the case of Article III, § 13, providing with respect to local or special laws.
Here, the bill was properly noticed and the intent to introduce the measure published in the journal of the locality wherein the property is located, meeting the procedural requirements for introduction.
We hope this information is of benefit to you and if we may be of further assistance, please call upon us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________________________________ GARY L. KEYSER Assistant Attorney General
RPI/GLK/bb