Dear Senator Cheek:
Your letter of July 16, 2008, requested our opinion as to the ownership of the minerals in, on and under the property of William Jay Williams acquired by Cash Sale Deed dated November 12, 2007, being Lot 10, Eagle's Nest Subdivision, Unit 1, Caddo Parish. Lot 10 is apparently located in the East 1/2 of Section 27, Township 16 North, Range 15 West, Caddo Parish, Louisiana. Your letter helpfully included copies of this 2007 Deed, and the three (3) documents and the Lewis case mentioned below.
Act 202 of the 1924 Louisiana Legislature authorized issuance of State Patents to "N. C.V. Ratcliff . . . and . . . H.J. Tieul . . ." covering, respectively, one (1) portion and two (2) portions of the E1/2 of Section 27, T16N, R15W, "upon payment into the State Treasury" of certain monies. Although enacted after the 1921 Louisiana Constitution, Act 202 of 1924 makes no express mention whatsoever of minerals in, on and under this Section 27 acreage, although it does contain a proviso "that nothing herein contained shall prejudice the rights or title of any other claimants to said lands, or any part thereof, who are claiming adversely to said" Ratcliff and Tieul.
While we have not been furnished copies of any State Patents, you did furnish a copy of an E-mail from Bobby Freyou, Public Lands Records Manager, State Land Office ("SLO"), dated January 9, 2007, in which he states that the SLO records reflect that "State Patent 11855 dated 1924 and State Patent 12174 dated 1927" were issued by the State "under the authority of State Act 202 of 1924". Mr. Freyou also advised that: "The State patents do not contain a mineral reservation as required by the State Constitution of 1921." (See below.)
Mr. Freyou noted the SLO policy that, even without an express reservation in the State patents, or in the 1924 Act, "since the Act, the [State Treasurer] receipts [for payments required by the Act], and the patents all date after 1921, the State should be claiming mineral rights under this property." In other words, the SLO *Page 2 
concluded that the ownership of the mineral rights did not pass to the Patentees because of the 1921 Constitution. Article IV, Section 2, of such Constitution provides that:
 In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes.
This is the same conclusion reached by the lawyer examining title to the E 1/2 of subject Section 27 for Moseley Petroleum Corporation that you provided with your opinion request, according to copy of a letter written on Moseley's behalf by Professional Energy, Inc., dated November 12, 1982. This letter asserts that, in view of the 1921 Constitution, "it is our attorney's belief, even without specific mineral reservation, all conveyances by the State of Louisiana from and after the effective date of the Constitution of 1921 would automatically reserve minerals to the state by operation of the law." We agree with the policy stated by Mr. Freyou of the SLO and the conclusions of the lawyer examining title for Moesley Petroleum, for the reasons set forth below.
The case of Lewis v. State of Louisiana, 156 So.2d 431, 244 La. 1039
(1963), which you cited in your request letter of July 16, 2008, has not been overruled and thus is still "good law". In Lewis, "the plaintiffs claim to the mineral rights [in and to the tract in dispute] is based upon a chain of title beginning with [a] state patent . . . conveying the tract of land with no express reservation of the mineral rights." While the Plaintiffs original claim was based on an 1862 State patent, "it was later discovered that the state had no title to this land" (i.e., that land described in the 1862 patent). 156 So.2d at 432. In 1942, the successors to the 1862 Patentee "made application to the state under Act104 of 1888 for a . . . lieu warrant" on other State of Louisiana lands "of the same class as those described in the defective patent." Ibid. In 1942, a lieu warrant was issued to these applicants, and later in 1942 the holder of the warrant "made application for a patent on" the tract in dispute. On January 6, 1943, State patent No. 13,291 was issued thereon, with "no express reservation of mineral rights." Ibid. Thus, no description of the tract in dispute was made in any pertinent State instrument of transfer of title until after 1921, even though the claimfor some (unspecified) State of Louisiana land dated back to the 1862 patent and the 1888 Act.
In its pleadings, "the state . . . narrowed its defense to the basic contention that the . . . patent of 1943 conveyed no mineral rights since Article IV, Section 2 of the Louisiana Constitution of 1921 . . . requires the reservation of mineral rights on all property sold by the state." Ibid. The Lewis Court set forth that: "The prime issue presented is whether the land in controversy is `property sold by the State' within the intendment of the constitutional provision", which the Court had just quoted in its entirety." Ibid. After pointing out that the 1862 patent and the *Page 3 
1888 Act were not sufficient to give the Plaintiff any claim prior to1921 as to the land at issue, the Court, per Justice (later, Chief Justice) Sanders, held:
 In the instant case, no action of any kind was taken by the holders of the defective patent until 1942, when the application for a lieu warrant was made. The issuance of the patent followed in 1943. In our opinion, Article IV, Section 2 of the Constitution of 1921 is clearly applicable to this conveyance. The section is mandatory. It applies to all sales of land whereby the state divests itself of title, with one exception; the redemption of property adjudicated to the state for taxes. Had it been intended to except sales under Act 104 of 1888, the exception also would have been formally expressed.
[156 So. 2d at 434. (The constitutional provision referred to by theLewis Court is now embodied in Art. IX, Sec. 4 of the 1974 Louisiana Constitution) (Emphasis added.).]
The Lewis Court then disposed, in favor of the State, Plaintiffs claims that (1) the State's defense was a collateral attack on the patent;[1] (2) the State's attack upon the 1943 patent was barred by the prescription of six years provided by La.R.S. 9:5661;[2] and, (3) the State was estopped from attacking the 1943 patent.[3]
Please note that as you said in your request letter, the 1943 patent was indeed held by Lewis to be "void", but the court clearly held, in our view, "void" only as to minerals — the surface of the tract in dispute was effectively conveyed by the 1943 patent, to wit:
 We conclude that the state patent is null, void and of no effect as to mineral rights and that these rights are owned by the State of Louisiana . . . [T]he State of Louisiana is decreed to be the owner of the mineral rights in and to [the tract in dispute].
[156 So.2d at 434-435. (Emphasis added.)] The Lewis case has been favorably cited since its 1963 decision. E.g., Dynamic Exploration,Inc., v. LeBlanc, 362 So.2d 734, (La. 1978). Furthermore, there are several prior Louisiana Attorney General Opinions concurring with the opinion we express below. E.g., Attorney General Opinion Nos. 79-1170, 77-390 and 96-200. *Page 4 
In the instant situation, based upon the materials and documents made available for our review, it appears that the Patentees to the actual land in question had no claim thereto until 1924 or later, all rights to this express land having arisen after 1921. Therefore, under the 1921 Louisiana Constitution, Article IV, Section 2, [4] and the holding inLewis v. State, supra, we are of the opinion that while the surface of the land conveyed in the Cash Sale Deed of November 12, 2007 (any other lands covered by State Patent Nos. 11855 and 12174) may be owned by the current record owner or owner thereof, the mineral rights therein, thereon and thereunder would be owned by the State of Louisiana.
We trust we have satisfactorily answered your question, but if anything further in needed, or if you have any questions, please contact us.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: __________________________ Andrew J. S. "Jaok Jumonville Assistant Attorney General
 JDC/AJSJ/tp *Page 1 
 July 24, 1996 OPINION NUMBER 96-200
Mr. James H. Jenkins, Jr. Secretary La. Department of Wildlife 
Fisheries P.O. Box 98000 Baton Rouge, LA 70898-9000
Dear Mr. Jenkins:
This is in response to your letter of April 18, 1996, requesting an opinion of this office concerning the constitutionality of Act 116 of 1995, providing with respect to the Anacoco-Prairie State Game and Fish Preserve.
As your letter states, the Act purports to transfer all property, both movable and immovable, comprising the Anacoco-Prairie State Game and Fish Preserve from the State of Louisiana to the governing authority of Vernon Parish.
You ask whether this Act constitutes a prohibited donation of state-owned property under Article VII, § 14 of the Louisiana Constitution of 1974. From an inquiry into the underlying facts, we find that other provisions of the Constitution are also applicable, as discussed hereafter.
The terms of Act 116 of 1995, refer to the creation of the Preserve provided in Act 277 of the 1948 Regular Session, making all lands which are part of the Preserve subject to transfer. The 1995 Act specifically recites the same lands which were included in the creation of the Preserve by Act 277 of 1948. Included within those lands are Bayou Anacoco, Bayou Prairie and Prairie Creek, which were navigable bodies of water at the time of state sovereignty, and, thus, their beds and bottoms are owned by the State of Louisiana.
Land title records of the state pertaining to the acquisition of lands constituting the Anacoco-Prairie State Game and Fish Preserve include seventy-two (72) transactions dating from June 27, 1950 — June 30, 1964, totalling some 5,379 acres, in addition to the rivers and streams mentioned above. *Page 2 
With respect to the particular question you have raised concerning the provisions of Article VII, § 14, the legal issue presented is whether the State may legally transfer or dispose of State property without receiving fair and equitable consideration.
Under the provisions of Article VII, § 14(A) of the Louisiana Constitution, except as otherwise provided therein, "the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." Exceptions to this general rule are found in Section 14(B), with respect to the use of public funds for programs of social welfare for the aid and support of the needy; for pension and insurance programs; for public employees; and for the pledge of public funds, credit or property with respect to bonded debt. Section 14(C) also authorizes the State, its political subdivisions and political corporations to engage in cooperative endeavors for a public purpose.
The Louisiana Supreme Court has interpreted the provisions of Article VII, § 14(A) to mean that a violation occurs whenever the State or a political subdivision seek to give up something of value when under no legal obligation to do so. In Town of Brusly v. West Baton Rouge ParishPolice Jury, 283 So.2d 288 (1st Cir. 1971), writ denied, 284 So. 2d 776 (Sup.Ct. 1973), wherein the Police Jury attempted to reallocate monies from its surplus funds to municipalities within the parish, it was held unconstitutional on the basis that the Police Jury had no legal obligation to provide funding to such municipalities. See alsoBeard-Pouland, Inc. v. Louisiana Department of Highways, 362 F.Supp. 547
(W.D. La. 1973), wherein it was held that the state could not constitutionally pay relocation expenses when the jurisprudence did not permit such and when a constitutional amendment authorizing this action had not gone into effect; and City of Port Allen, Louisiana v. LouisianaMun. Risk Management Agency, Inc., 439 So.2d 399 (Sup.Ct. 1983), wherein the Supreme Court held as unconstitutional a statute providing that all government subdivisions which are members of an intergovernmental risk management agency are jointly liable for claims not paid by the agency on the basis that one municipality could not constitutionally agree to pay claims of another inasmuch as it would amount to a donation or a gratuity not authorized by law.
It is notable that in the latter case, the legislature had expressly attempted to impose solidary liability on all members of the fund for unpaid claims, and this was just as explicitly held by the Supreme Court to violate the provisions of Article VII, Section 14(A) of the Constitution. The opinions of this office have consistently followed the holdings of these cases, as in Op. Atty. Gen. No. 78-1260 (October 4, 1978); Op. Atty. Gen. No. 87-587 (September 8, 1987); Op. Atty. Gen. No. 89-180 (April 26, 1989); Op. Atty. Gen. No. 90-392 (January 15, 1991); Op. Atty. Gen. No. 90-73 (April 24, 1990); Op. Atty. Gen. No. 93-681 (November 1, 1993); Op. Atty. Gen. No. 93-717 *Page 3 
(November 22, 1993); Op. Atty Gen. No. 95-252 (June 30, 1995); Op. Atty. Gen. No. 95-472 (December 4, 1995); Op. Atty. Gen. No. 96-143 (April 8, 1996).
As a consequence of the purported transfer of navigable water bottoms, the provisions of Act 116 of 1995 implicate the provisions of Article IX, § 3 of the Louisiana Constitution of 1974 which provide, in part, that the "legislature shall neither alienate nor authorize the alienation of the bed of a navigable water body * * * ".
As explained below, there are certain acts which are beyond even the authority of the Legislature or the highest state officials, which would include the purported transfer of state-owned navigable water bottoms. Similarly, the provisions of Article IX, § 4 of the Louisiana Constitution require that mineral rights on property sold or transferred by the State be reserved, and no such provision was included in Act 116
of 1995.
Thus, the purported transfer by Act 116 of 1995 of "all property, both movable and immovable" clearly contravenes the provisions of Article IX, § 3 and § 4 with respect to navigable water bottoms and minerals. SeeGulf Oil Corporation v. State Mineral Board, 317 So.2d 576, at 592 (Sup. Ct. 1976); and Lewis v. State, 156 So.2d 431 (Sup.Ct. 1963). Gulf Oil
arose out of an oil company instituted concursus proceeding involving the issuance of a land patent by the State to private individuals on lands containing navigable water bottoms, holding that the beds of such navigable waters are owned by the State in its sovereign capacity and cannot be alienated by the State, except through constitutional amendment. Gulf Oil, supra, 589-591.
Therefore, under the cited jurisprudence of the courts of this State, it is our opinion that the provisions of Act 116 of 1995, insofar as they purport to transfer "all property, both movable and immovable" comprising the Anacoco-Prairie State Game and Fish Preserve in Vernon Parish owned by the State of Louisiana to the governing authority for the Parish of Vernon, particularly insofar as they may be construed to include navigable waters and minerals, are null and void as being in direct contravention of Article VII, § 14 and Article IX, § 3 and § 4 of the Louisiana Constitution of 1974. The provisions of the Act provide absolutely no compensation to the State for the transfer and certainly constitute the prohibited transfer of the funds, credit, property or things of value of the State contemplated by the cited constitutional provisions, as held by our Courts.
With respect to certain other constitutional provisions, we have found Act 116 of 1995 to be in compliance, as in the case of Article III, § 13, providing with respect to local or special laws. *Page 4 
Here, the bill was properly noticed and the intent to introduce the measure published in the journal of the locality wherein the property is located, meeting the procedural requirements for introduction.
We hope this information is of benefit to you and if we may be of further assistance, please call upon us.
Yours very truly,
RICHARD P. IEYOUB
Attorney General
By: __________________________
GARY L. KEYSER
Assistant Attorney General
RPI/GLK/bb *Page 1 
 September 14, 1979 OPINION NUMBER 79-1070
129 . . . Taxation
Art. VII, Section 26 La., Const., Act 592 of 1978, Act 736 of 1979
Revenue sharing need not be taken into account in figuring 1979 millages.
Honorable Charles A. Abels Assessor, Livingston Parish Post Office Box 307 Livingston, Louisiana 70754
Dear Mr. Abels:
Reference is made to your letter of September 12, 1979, in which you ask an opinion of this office as to whether taxing districts should take revenue sharing into consideration when setting millages for sinking funds established for the purpose of paying bonded indebtedness.
I am enclosing a copy of Opinion No. 79-922 of this office written to Mr. Robert E. Harroun, III of the Legislative Auditor's Office to the effect that revenue sharing need not be taken into account in 1979.
I believe this opinion is dispositive of your question. If you have any further questions please do not hesitate to get in touch.
Yours truly,
WILLIAM J. GUSTE, JR.
ATTORNEY GENERAL
By:__________________________
FRED L. CHEVALIER
ASSISTANT ATTORNEY GENERAL
FLC:mcn
Enclosure *Page 1 
 OPINION 77-390 March 4, 1977
90-B-1 PUBLIC LANDS, State Lands Homestead: R/W: Transfer 90-B-2 Public Lands, Leases other than oil and gas 90-B-3 Public Lands, Public 
private Domains, Distinction 65 Mines Minerals Article IX, S4(A) of the 1974 Const.
The mineral rights on property sold by the state shall be reserved, except where the owner or person having the right to redeem buys or redeems property sold or adjudicated to the state for taxes.
Mr. Lester G. Renard Attorney at Law 17 East 63rd Street New York, N.Y. 10021
Dear Mr. Renard:
This opinion is in response to your letter dated January 6, 1977. You have asked several questions which are set forth and answered below.
First, you asked if Louisiana has adopted a mineral code pursuant to Article 3, Section 38 of the 1921 Constitution. On July 12, 1974, by Act No. 50 of the 1974, the legislature enacted a mineral code which became effective as of January 1, 1975. The mineral code is Title 31 of the Revised Statutes.
You asked if there are any circumstances, other than redemption of property sold or adjudicated to the state for taxes, under which property sold by the state will carry with it by way of such conveyance to a purchaser the oil, gas and mineral rights in, under and on such land. This question must be answered in the negative. This answer is mandated by Article 9, Section 4(A) of the Constitution of 1974 set forth below.
 Section 4. (A) Reservation of Mineral Rights. The mineral rights on property sold by the state shall be reserved, except when the owner or person having the right to redeem buys or redeems property sold or adjudicated to the state for taxes.
In applying a similar provision in the Constitution of 1921, the Louisiana Supreme Court in Lewis v. State, 244 La. 1039, 156 So.2d 431
stated this section: *Page 2 
 ". . . Applied to all sales of land whereby the state divests itself of title, with one exception: the redemption of property adjudicated to the state for taxes." (Emphasis added)
You also pose the following question:
 Assuming the reservation of mineral rights by the State is effective and such rights have remained with the State, what is the legal effect, if any, if an owner of the title to the land in fee simple sells the land but reserves unto himself the oil, gas and mineral rights? What are the respective rights and remedies of the State, the Seller and the Purchaser, respectively.
The reservations of mineral rights in such a sale is of no legal effect. The owner of the land could not reserve to himself mineral rights which are owned by the state. If the owner of the land interferes with the state's mineral rights, the state's remedies are either petitory or possessory actions.
If you require further assistance in regard to these questions, please let us know.
Very truly yours,
WILLIAM J. GUSTE, JR.
ATTORNEY GENERAL
By:__________________________
GARY L. KEYSER
ASSISTANT ATTORNEY GENERAL
WJGjr/GLK/yd
[1] The Lewis Court clearly held that the defense was not a collateral attack. Ibid.
[2] "The state cannot lose by prescription that which it cannot constitutionally alienate". Ibid.
[3] "Estoppel cannot bar an attack by the state on a patent issued in contravention" of the 1921 Constitution.
[4] Now contained, almost verbatim, in Article IX, Section 4 of the 1974 Louisiana Constitution.