The CHIEF JUSTICE
 

 delivered the opinion of the court, and after stating the case, proceeded:
 

 The first question which requires consideration in the case before us is: Was the levee tax imposed in violation of any contract between the State and the United States?
 

 It is not doubted that the grant by the United States to the State upon conditions, and the acceptance of the grant by the State, constituted a contract. All the elements of a contract met in the transaction, — competent parties, proper subject-matter, sufficient consideration, and consent of minds. This contract was binding upon the State, and could not be violated by its legislation without infringement of the Constitution.
 

 The contract required the State to appropriate the lands granted to the purpose of reclaiming them. The lands themselves might be conveyed to the levee contractors for work performed, or the contractors might be paid in money or in scrip representing land. If the State, therefore, after acceptance of the grant, and without applying the lands or their
 
 *156
 
 proceeds in money or scrip to the purpose of reclamation, had sought, by means of taxation, to compel purchasers to pay for the levees and drains necessary to reclaim their laud, it would certainly be difficult to say that the contract was not violated. But the case before us hardly comes within this description. The allegation and proofs do not show that the State had not applied all the lands granted and their proceeds to the making of levees and drains before proceeding to impose the special tax; and if this was done, and the work of reclamation remained still incomplete, the imposition of such a tax for the completion or preservation of the work, cannot be regarded as inconsistent with the obligation of the contract between the State and the United States.
 

 The next and only remaining question is: "Was the levee tax in violation of any contract between the State and the complainant ?
 

 It seems quite clear that the act of 1851, authorizing the issue of transferable land.scrip and its receipt from locators of land in payment, and the provision in the fourteenth section, offering inducements to purchasers and contractors by exempting from taxation, for ten years or until reclaimed, all the swamp or overflowed lands, constituted a contract between the State and the holders of the land scrip issued under the act.
 

 When the scrip was issued to a contractor, it represented a certain quantity of land uutaxable for ten years, unless the land should be sooner made fit for cultivation. When transferred to another person, it represented to him a like quantity of like land. The contract of the State was to convey the land for the scrip, and to refrain from taxation for the time specified. Every piece of scrip was a contract between the State and the original holder and his assigns. How what was the effect of that contract when made? Bid it not bind the State to receive the scrip in payment for swamp land, exempted for a limited time from taxation ? The scrip, if not receivable for lands, was worthless. To annul the quality of receivability was to annul the contract. But the
 
 *157
 
 exemption of the lands for which it was receivable from taxation was a principal element in its value; and. repeal of the exemption was the destruction of this element of value. This was clearly an impairment of the contract. The State could no more change the terms of the contract by changing the stipulated character of the land to be conveyed in satisfaction of the scrip as to liability to taxation, than it could abrogate the contract altogether by refusing to receive the scrip at all in payment for land.
 

 We are constrained to regard the repeal of the exemption act, so far as it concerns lands paid for, either before or after the repeal, by scrip issued and paid out before repeal, as impairing the contract of the State with the holders of the scrip. - >
 

 It was strenuously urged for the defendant, that the exemption contemplated by the statute was exemption from general taxation, and not from special taxation for local improvements benefiting the land, such as the making of levees; and many authorities were cited in support of this view. The argument would have great force if the provision for exemption had been contained in a general tax law, or in a law in framing which the legislature might reasonably be supposed to have in view general taxation only. But the provision under consideration is found in a law providing for the construction of levees and drains, and devoting to that object funds supposed to be more than adequate, derived from the very lands exempted, and the exemption is for ten years, or until reclaimed, and is offered as an inducement to take up the lands, and thus furnish those funds. It is impossible to say that this exemption was not from taxation for the purpose of making these levees and drains as well as from taxation in general. Any other construction would ascribe to the legislature an intention to take the whole land for the purposes of the improvement, and then to load it with taxation for the same object, in the hands of purchasers whom it had led to expect exemption from all taxation, at least until the land should be reclaimed.
 

 
 *158
 
 The decree of the Supreme Court of Arkansas must, therefore, he reversed and the cause remanded, with instructions to enter a
 

 DECREE IN CONFORMITY WITH THIS OPINION.
 

 N. B. The same order was made in cases Nos. 28, 29, 30, 31, 32, and 33, argued with the above case, and which the Chief Justice said were governed by its decision.