23 So.2d 279

DOUGLAS v. STATE.

No. 37785.

June 29, 1945.

Rehearing Denied July 17, 1945.

Fred S. LeBlanc, Atty. Gen., W. D. Goff, First Asst. Atty. Gen., and Robert R. Reid and John L. Madden, Sp. Asst. Attys. Gen., for defendant-appellant.

Kemble K. Kennedy, of Baton Rouge, for plaintiff and appellee.

FOURNET, Justice.

The state is appealing from a judgment in favor of the plaintiff, Judith Hyams Douglas, in a suit instituted by her under Act No. 52 of 1944 wherein she was authorized "to file suit against the State of Louisiana through the Governor and State Treasurer upon a claim for the recovery of a cash bonus received by the State of Louisiana, allegedly in error, amounting to *Twenty-Four Thousand Nine Hundred Thirty-one* and seventy-five one hundredths ($24,931.75) Dollars, for an award by the State Mineral Board on March 8, 1939, to the Standard Oil Company of Louisiana of an oil, gas and mineral lease covering certain land acquired by the said Judith Hyams Douglas with Warrant No. 170 issued under the provisions of Act 104 of 1888 from the State of Louisiana, upon application dated February 19, 1919, represented by Patent No. 13,081 and described as North West Quarter of Section No. Twenty-Four (24) in Township No. Twenty-Three (23) North Range No. Two (2) West in the North of Red River Land District, Parish of Union, State of Louisiana containing One Hundred Sixty and 85/100 (160.85) acres; * * *."

It appears that because the State of Louisiana erroneously sold Henry M. Hyams, the plaintiff's ancestor, a considerable acreage of "swamp lands" in 1863 to which it had no title, the property having been otherwise disposed of by the United States at the time the state selected it under the Swamp-Land Act of March 2, 1849, 9 Stat. 352, the executor of his estate in 1888, he having died in the meanwhile, surrendered the patents thus erroneously issued for cancellation and applied in writing for warrants covering the same number of acres of land, to be located on land of the same character as had been covered by the patent, under the authority of Act No. 104 of 1888. The executor died before these warrants were issued and nothing further was done in the matter until in 1917 the heirs of Hyams, minors at the time of his death, secured the issuance by the Registrar of the State Land Office of lieu warrants for the patent so surrendered by the executor, Warrant No. 170 having been acquired by the plaintiff in this action as one of the heirs of Hyams. Under this warrant the plaintiff, on February 19, 1919, applied to the State Land Office for the location of

the land in the NW¼ of Sec. 24, T. 23 N., R. 2 W., Union Parish, containing 160.85 acres, receipt of such application not being made by the land office until December 27, 1919. However, no further action was taken in the matter until the plaintiff renewed this application, without waiving any of her rights under her previous application, on February 3, 1939, specifically requesting that the Registrar of the State Land Office use Warrant No. 170 in the location of this land. The registrar rejected this demand, advising Mrs. Douglas that the lands had been withdrawn from sale or entry by the Governor's proclamation of March 20, 1917, and, on March 8, 1939, thereafter, due advertisement having been made, the State Mineral Board executed an oil, gas, and mineral lease in favor of the Standard Oil Company of Louisiana on the property thus applied for for the consideration of $24,931.75. After drilling a dry hole on adjoining property in 1939, the company abandoned this lease. Following such abandonment and pursuant to the decision of this court in the case of State ex rel. Hyams' Heirs v. Grace, 197 La. 428, 1 So.2d 683, and in the previous case of State ex rel. Hyams' Heirs v. Grace, 173 La. 215, 136 So. 569, the Registrar of the State Land Office issued patent No. 13,081 covering the land involved in this case. The plaintiff then filed suit against the State Mineral Board to recover the amount in controversy here, but this suit was dismissed on an exception of no cause of action. Subsequently, the legislature having adopted its Act No. 52 of 1944 above referred to, the present suit was instituted.

The defendant first filed exceptions of no legal cause and no legal right of action and, with reservation of its rights thereunder, answered admitting the execution of the lease in favor of the Standard Oil Company of Louisiana and the receipt of the sum of money named in plaintiff's petition, but denied liability.

The judge referred the exceptions to the merits and on the trial of the case rendered judgment in favor of the plaintiff, and, in a well considered opinion, correctly stated the issues involved in the controversy and, in our opinion, properly disposed of them and we therefore quote with approval from his opinion the following:

"A fair analysis of the position of the plaintiff is that when an entryman complies with the appropriate statute and does everything required thereby, as she has done in this case, equitable title vests immediately, although the execution of the necessary documents to convey legal title is delayed. Applying this principle to the instant case she maintains that for all practical purposes the property herein involved became hers on February 19, 1919, or if not then, on February 3, 1939, the date of the renewal of her original application.

"The position of defendant on the other hand, is that the above stated principle of law has no application where, as in this case, the application to locate is denied. Indeed, the first application, of date February 19, 1919, is attacked for the reason that no warrant was offered, and both applications are attacked because it is not alleged that the land sought to be located was

of the same class of land that was originally entered and paid for by Henry M. Hyams.

"The reason given in the Register's letter of date February 3, 1939, directed to Albritton, attorney, for her rejection of the aforesaid application was that 'all State lands were withdrawn from sale, or entry by Governor's Proclamation dated March 20, 1917, as authorized by Act No. 38 of 1914.'

"This Act reads as follows:

" 'To authorize the Governor to withdraw from sale or entry any of the vacant and unappropriated public lands and lake beds or bottoms belonging to the State, whenever in his opinion, they appear to be more valuable for mineral than for any other purpose, and to ratify and confirm all withdrawals heretofore made under Act 258 of 1912.

" 'Section 1. Be it enacted by the General Assembly of the State of Louisiana, that the Governor be, and he is hereby vested with authority to withdraw from sale or entry any of the vacant and unappropriated public lands and lake beds or bottoms belonging to the State, whenever in his opinion, they appear to be more valuable for mineral than for any other purpose, and to restore to sale or entry all withdrawn lands, at his discretion. * * *'

"No copy of the alleged proclamation was offered in evidence on the trial of the case, nor do I find any reference thereto in the brief filed on behalf of the State.

"Sufficeth to say that if as stated in the Register's letter of date February 3, 1939, 'all state lands were withdrawn from sale or entry by Governor's proclamation dated *March 20, 1917*,' it is strange that no such defense was set up in State ex rel. Hyams' Heirs v. Grace, 197 La. 428, 1 So.2d 683, and in State ex rel. Hyams' Heirs v. Grace, 173 La. 215, 136 So. 569, in both of which cases the application to locate vacant lands of the State, were filed *subsequent to March 20, 1917.*

"In these two cases it is pointed out that lieu warrant No. 168 was not issued until December 28, 1917, some nine months after the alleged proclamation. In the first of said cases written application to enter vacant lands of the State were made *April 22, 1918, June 3, 1919, and March 23, 1938.* In both of said cases the writ of mandamus was issued to compel the issuance of patents, as prayed for. In the light of these circumstances it would seem that the reason given by the Register in her letter of February 3, 1939, for the rejection of plaintiff's applications was not well founded; at least, it has not been proven to be, and will therefore be eliminated from further consideration, and so will the contention that the land sought to be entered by lieu warrant 170 was not shown to be of the same kind and class as that originally bought by Henry M. Hyams. *The fact that plaintiff was subsequently permitted to enter the same and the fact that a patent was issued covering this land, dated May 28, 1941, shows that the land in question was neither withdrawn from sale or entry nor different in kind from that originally purchased by Hyams.*

"In order to determine the essential point in this case, that is, whether plaintiff acquired an equitable interest in the land involved, prior to the granting of the aforesaid oil and mineral lease of date March 8, 1939, it will be necessary to see just what plaintiff did prior to that time to locate with lieu warrant 170 NW¼ Sec. 24, Township 23, North Range 2 West, containing 160.85 acres.

"The letter written by plaintiff's attorney, Albritton, of date February 19, 1919, reads as follows:

" ' *   *   *

" 'On behalf of the heirs of H. M. Hyams, I hereby make application to locate in the name of "Judith Hyams Douglas," the following lands to-wit:

" 'NE¼ of SE¼ Sec. 1, T. 21 N. R. 5 W; *NW¼ of SE¼ Sec. 4, T. 23, N. R. 3 W.*; SE¼ of NE¼ Sec. 36, T. 22 N. R. 10 W.; SE¼ of SW¼ Sec. 28, T. 15, N. R. 9 W.; NE¼ of SW¼ Sec. 22, T. 23 N. R. 3 W.; NW¼ of NW¼ Sec. 4, T. 23 N. R. 5 W.; *NW¼ Sec. 24, T. 23, N. R. 2 W.*, also

" 'SE¼ of SE¼ Sec. 23; N½ of SW¼ Sec. 25, T. 16, N. R. 14 W.

" 'Kindly give this matter your prompt attention and oblige,   *   *   *'

"It is true, as urged by counsel for the State, that this letter does not specifically give the number of the lieu warrant or warrants proposed to be used for said locations. However, as pointed out in Hyams v. Grace, 173 La. 215, 136 So. 569 supra, the Register had issued in Decem-

ber, 1917, various warrants to Hyams or the heirs of Hyams to indemnify them for a patent which had been issued for lands the State did not own, and it can be fairly assumed that the Register knowing that these warrants had been issued, knew that Albritton intended that one or more of them was to be used for the purpose of locating the lands described. This is borne out by the Register's letter of date December 27, 1919, which reads as follows:

" ' *   *   *

" 'Your application, dated February 19th, 1919, to locate lieu warrants, issued under Act 104 of 1888, on the NE¼ of SE¼ Sec. 1, T. 21, N. R. 5 W., NW¼ of SE¼ Sec. 4, T. 23 N.R. 3 W., SE¼ of NE¼ Sec. 36, T. 22 N. R. 10 W., SE¼ of SW¼ Sec. 28, T. 15 N. R. 9 W., NE¼ of SW¼ Sec. 22, T. 23 N. R. 3 W., SE¼ of NW¼ Sec. 4, T. 23 N. R. 5 W., *NW¼ Sec. 24, T. 23 N. R. 2 W.*, also SW¼ of SE¼ Sec. 23, N½ of SW¼ Sec. 25, T. 16 N. R. 14 W., La. Mer., has been received, and you will be advised when action is taken thereon. *   *   *'

"However, even if Albritton's letter of date February 19, 1919, was insufficient or indefinite as to the warrant or warrants to be used, his letter of February 3, 1939, was very clear. In that letter the Register was expressly requested to 'use warrant number 170 issued Dec. 28, 1917 for one hundred sixty-one and 46/100 (161.46) acres issued under provisions of Act 104 of 1888.'

"At no time did the Register ever object to the wording of either application or to the failure of Albritton to expressly name

in his letter of February 1919 the warrant he intended to use.

"I think therefore, that the application should be considered as having been made in February 1919. In any event, it was, in my opinion, timely and properly made.

■ "This being so, the question arises, what are plaintiff's rights? It is very true that in 1939, twenty years after the original application, plaintiff's attorney was notified that said applications were rejected. This however, can have no legal bearing on the case, *unless the rejection was based upon just and legal grounds.* Obviously, if it was arbitrary or done without legal justification, the Register's rejection did not legally prevent plaintiff from locating the land described and from subsequently obtaining a patent conveying the same. As a matter of fact the Register has since issued the patent, but only after the Mineral Board received the sum of money which plaintiff now seeks to recover.

"Learned counsel for the State in their brief say:

" 'The only right that was granted plaintiff by the · issuance of warrant No. 170 was the right to have a patent covering 160 acres of land of the same class as that to which the title of the State failed.'

"Undoubtedly this statement is correct. The question here is, when did the rights of plaintiff accrue, when she filed her application to enter the land in 1919 or 1939 or when the patent actually issued on May 28, 1941?

"After carefully considering this matter, I have reached the conclusion that plain-

tiff having done all the law required her to do, that is, file her application to enter and tender a lieu warrant regularly issued under Act No. 104 of 1888, equitable title vested in plaintiff as of the date of her application. After the application was filed, what remained to be done was to be done by the Register of State Lands. The failure of this official to act until May 1941 when a patent was issued should not, in my opinion, have the effect of depriving the plaintiff of a right conferred upon her by statute.

"In the case of State ex rel. Hyams' Heirs v. Grace, Register, 173 La. 215, 136 So. 569, 570, plaintiff sought by mandamus to compel the preparation and issuance of a patent covering vacant land sought to be located. There the executor administering the estate, in 1888, availing the estate of provisions of the Act, surrendered patent No. 11,783 and had it cancelled by the Register, and at the same time (1888), *filed with the Register a written application for a warrant for the same number of acres to be located on land of the same class or character as the land for which the patent had been issued.*

"The executor died before the lieu warrant was issued. The cancelled patent and the application for the warrant were lost sight of in the office of the Register of the Land Office until 1917, after the heirs of Hyams had reached the age of majority.

"Upon discovering the cancelled patent and the application for the lieu warrant, the Register issued to the heirs of Hyams warrant No. 168, dated the 28th of December, 1917.

"As pointed out by the Supreme Court:

" 'Meanwhile the act of 1906 had been enacted, providing that the holders of land patents that had been issued through error should be refunded the price which had been paid to the state for the land, and appropriating $5,000 for that purpose. Therefore, when the heirs of Hyams undertook to locate their warrant No. 168 on the land in Sec. 13, Tp. 22 N., R. 3 W., being vacant land of the state and of the same class or character as the land for which the patent No. 11,783 had been issued, the register of the land office, being advised by the Attorney General that the act of 1906 had superseded and repealed the act of 1888, *refused to allow an entry under the* warrant No. 168.'

"The Supreme Court held that the opinion of the Attorney General was in error and had this to say:

" 'Our opinion is that, inasmuch as the executor, for the estate of Hyams, had done everything that was required of him by the act of 1888, to entitle the heirs of Hyams to a lieu warrant for the land which he had bought and paid for and received no title for, and inasmuch as it was then the ministerial duty of the register of the land office to issue a warrant in lieu of the cancelled patent, No. 11,783, the heirs of Hyams had the same rights and advantages under the act of 1888 *as if they had actually received their lieu warrant, when the act of 1906 was adopted.'*

"Applying the reasoning in that case to the case at bar, and based upon the same, as well as upon the case of Smith et al. v. Anacoco Lumber Company, 157 La. 466,

102 So. 574, my opinion is that as application to enter the land here involved was regularly made in 1919 and repeated in 1939, it was the ministerial duty of the Register of the Land Office to prepare for the Governor's signature a patent covering the said land; and it was the duty of the Governor to sign such patent conveying the same to the heirs of Hyams, and that the equitable title in the said land vested in the heirs of Hyams as of the date of said application, although the legal title thereto remained in the State until the issuance of the patent in 1941.

"Having reached the above and foregoing conclusion, it is my opinion that when the Mineral Board executed an oil, gas and mineral lease in favor of the Standard Oil Company in the year 1939 and collected as rental the sum of $24,931.75, said Board *acted without legal authority,* and that as the equitable title to the property vested in plaintiff at the time of and prior to said lease, the rentals collected belong to plaintiff. * * * "

Counsel for the state in their brief now contend that "The idea of an equitable title to real estate is a concept entirely foreign to the law and jurisprudence of this State."

Obviously the trial judge in stating in his opinion that the plaintiff had an equitable title to this property from the date of her application to the issuance of the patent, during which interim the state had the legal title thereto in trust for the plaintiff, did not thereby intend to create a new system of law with respect to the ownership of real estate in this state. On the contrary we think a mere reading of the

opinion of our learned brother will disclose that the idea intended to be conveyed by him was that when the plaintiff applied for the patent in 1919 and renewed the same in 1939, her right thereto became perfect and complete and she thereby acquired a vested right to the property the same as if the patent had issued, entitling her to all revenues derived therefrom. The fact that the recorded title was in the state did not authorize the state to alienate the same to the prejudice of the plaintiff. She could not be charged with the arbitrary refusal of the Registrar of the State Land Office to prepare the patent for the Governor's signature, the functions of both of these officials in connection therewith being ministerial.

For the reasons assigned, the judgment appealed from is affirmed.