STEWART, J.
 

 |TIn this concursus action to determine entitlement to the proceeds from a producing gas well in DeSoto Parish, the trial court granted summary judgment in favor of the plaintiff, Justiss Oil Company, Inc., (“Justiss”), recognizing it as the owner of one-half of the mineral rights attendant to property referred to herein as “Lot 5.” The defendants, Wilson Production 16, L.L.C., along with the Louisiana State Mineral Board, the Louisiana Wildlife and Fisheries Commission, the Louisiana Department of Wildlife and Fisheries, and the Louisiana Department of Natural Resources now appeal the granting of summary judgment in favor of Justiss and the denial of their cross-motions for summary judgment.
 

 At issue is whether the mineral rights were reserved to the State of Louisiana (the “State”) under La. Const. 1921, Article IV, § 2, when a patent conveying Lot 5 was issued in 1935, upon presentation of a lieu warrant that had been issued in 1919. For reasons explained in this opinion, we find that the mineral rights attendant to Lot 5 were reserved to the State by operation of law when the patent was granted in 1935. Accordingly, the trial court erred in granting summary judgment in favor of Justiss and in denying the cross-motions by the defendants.
 

 FACTS
 

 Justiss is the operator of a producing natural gas well in DeSoto Parish identified as the “Justiss Oil Company, Inc.— Louisiana Wildlife and Fisheries 16 No. 1 well.” Included in the unit for the well is Lot 5, which is identified as follows:
 

 | ^¿Governmental Lot 5 or the fractional Southwest Quarter of the Northeast Quarter, Section 16, Township 14 North, Range 12 West.
 

 Lot 5 comprises about 37 acres out of the total unit of about 627 acres, and .05872036 of the gross production revenue for the well has been allocated to Lot 5.
 

 Ownership of the mineral rights underlying Lot 5 is disputed. Justiss claims ownership of one-half of the mineral rights. Defendants claim the State owns all the mineral rights. Because Justiss as operator of the well is charged with distributing the production revenue, it filed this concursus action to have the conflicting ownership claims asserted and resolved.
 

 Justiss filed a motion for summary judgment, which was followed by cross-motions for summary judgment by the defendants. In support of its motion, Justiss filed an affidavit by R. Joseph Wilson, the attorney who rendered the “Division Order Title Opinion” for the well. Exhibits to the affidavit include documentation establishing the chain of title for Lot 5.
 

 Relevant to this dispute, the chain of title shows that in August 1896, the State had mistakenly sold 40 acres to which it had no title. On April 9, 1919, Frank J. Pierson had the erroneous 1896 entry certificate and patent cancelled and obtained
 
 *509
 
 “Land Warrant No 187,” referred to hereafter as the “lieu warrant.” This entitled Pierson, his heirs or assigns to have the lieu warrant located upon lands of the “same class” as that of the original entry-certificate and patent of 1896.
 

 In January 1935, Joseph A. Clements presented the lieu warrant to the State’s land office to have it located on Lot 5. Accordingly, Patent No. |s101068 was issued by the State evidencing the conveyance of Lot 5 to Clements.
 

 Justiss acquired Lot 5 along with other property through a sheriffs sale on September 9,1981. Then, by act of sale dated January 11, 1999, Justiss sold Lot 5 and other acreage to the Louisiana Land Company of Rapides, Inc. (“LLCR”). In the act of sale, Justiss reserved “an undivided one-half (½) interest in and to all oil, gas and minerals in, on or under” the property-
 

 By a cash sale deed executed on October 7, 1999, LLCR sold acreage, inclusive of Lot 5, to the Louisiana Wildlife and Fisheries Commission and the Louisiana Department of Wildlife and Fisheries. In June 2006, the Louisiana State Mineral Board granted a mineral lease to Cypress Energy Corporation covering state-owned acreage in DeSoto and Red River Parishes.
 

 Justiss sought to establish by the chain of title that it reserved and owns an undivided one-half interest in the mineral rights underlying Lot 5. Defendants stipulated to the correctness of the chain of title established by Justiss. However, they argued that the mineral rights were not conveyed in 1935, but were reserved in favor of the State as mandated by La. Const. 1921, Article IV, § 2. Justiss countered that because the patent was issued pursuant to a 1919 lieu warrant, Art. IV, § 2 did not apply.
 

 The trial court agreed with Justiss’s argument and granted summary judgment in its favor, recognizing it as owner of one-half of the mineral rights underlying Lot 5. Defendants now appeal.
 

 [^DISCUSSION
 

 Summary judgments are reviewed
 
 de novo
 
 on appeal using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.
 
 Bellard v. American Cent. Ins. Co.,
 
 2007-1335 (La.4/18/08), 980 So.2d 654. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits show that there is no genuine issue as to material fact and that the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(B).
 

 The facts of this matter are undisputed. What remains to be determined is whether the patent issued by the State in 1935, pursuant to the 1919 lieu warrant, conveyed the mineral rights with the land or whether the State reserved the mineral rights as mandated by La. Const. 1921, Art. IV, § 2. Though similar disputes have been addressed by the courts, the facts of this case present a
 
 res nova
 
 issue.
 

 Issuance of the lieu warrant in 1919 was authorized by Act No. 104 of 1888, which was enacted for the following purpose:
 

 To authorize the register of the State land office, where it is made to appear that dual or double entries have been made, to cancel the invalid and erroneous entry and to issue a warrant therefor, locatable on other State lands of the same class as was originally entered.
 

 As indicated in Act No. 104, there were instances where the State had sold the same land twice or sold land that had already been patented and sold by the United States government. To resolve the
 
 *510
 
 conflicting claims, the State authorized the land office to cancel the erroneous sales and issue | ¡/‘warrants,” referred to here as lieu warrants, which were assignable. The lieu warrants could then “be located on the same class of lands that were originally entered by the party or parties in whose favor they were issued.” Act No. 104 of 1888, Section 3.
 

 In 1921, a new state constitution was adopted. La. Const. 1921, Art. IV, § 2 included the following language:
 

 In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes.
 

 Almost 14 years after the Constitution of 1921 was adopted, Joseph Clements presented the 1919 lieu warrant to the State to have it located on Lot 5 in DeSoto Parish. A patent declaring that the State “does give, grant, and sell” the specified land to Clements was issued on January 28,1935.
 

 Even though Art. IV, § 2 mandated the reservation of mineral rights on any and all property sold by the State, Justiss argues that this provision did not apply to the conveyance that took place in 1935. Instead, Justiss focuses on the date of the lieu warrant. Justiss asserts that the issuance of the lieu warrant in 1919 pursuant to Act 104 created a contractual or vested right. Citing La. Const. 1921, Art. IV, § 15, which prohibited the passage of ex-post facto laws, laws impairing the obligation of contracts, or laws that would operate to divest one of vested rights, Jus-tiss asserts that Art. IV, § 2 could not be applied retroactively so as to impair the rights under a lieu warrant issued prior to 1921. Rather, Art. IV, § 2 applies prospectively only. Lastly, Justiss asserts that jurisprudence has consistently held that lieu | (¡warrants issued before 1921 obligated the State to convey mineral rights along with surface rights.
 

 Contrary to Justiss’s assertion, defendants interpret jurisprudence as holding that no rights vest with the issuance of the lieu warrant. They assert that property rights vest only when the lieu warrant is presented to obtain a patent for a specifically identified parcel of land. Defendants assert that this occurred when Clements applied to the State in 1935 for a patent to locate the lieu warrant on Lot 5. By then, the 1921 Constitution had been in effect for almost 14 years, and no mineral rights were conveyed with the land.
 

 State ex rel. Hyams’ Heirs v. Grace,
 
 173 La. 215, 136 So. 569 (La.1931), hereafter
 
 “Hyams I,”
 
 and
 
 State ex rel. Hyams’ Heirs v. Grace,
 
 197 La. 428, 1 So.2d 683 (La.1941), hereafter
 
 “Hyams II,”
 
 are the main cases relied on by Justiss. Both stem from the same underlying facts. In 1863, Henry Hyams purchased land from the State which had already been sold by the United States government. By the time Act No. 104 was passed to indemnify the holders of patents for land which the State did not own, Mr. Hyams had died and his children were all minors. Pursuant to Act 104, Hyams’ executor had the erroneous patent canceled in 1888, and at the same time filed an application for a lieu warrant. The executor died before the lieu warrant was issued, and no action was taken by the State on the warrant application. When Hyams’ heirs reached the age of majority, the warrant application was found, and a lieu warrant was issued to them in 1917. At the same time, Hyams’ heirs applied for a patent to partially locate the lieu warrant on 120 acres of land in Union Parish.
 

 |7In
 
 Hyams I,
 
 the State refused to issue the patent on the grounds that the lieu warrant had been issued in 1917, after Act
 
 *511
 
 No. 104 had been repealed and superseded by Act No. 131 of 1906. Act 131 authorized refunds rather than the issuance of lieu warrants to the holders of erroneously granted patents. The Hyams heirs filed a mandamus action to compel the State to issue the patent. Though the trial court ruled in favor of the State, the judgment was reversed on appeal and mandamus relief granted. The supreme court concluded that Act 131 neither repealed nor superseded Act 104. Even though the lieu warrant had not been issued until 1917, Hyams’ executor had applied for the lieu warrant in 1888, and had done everything required of him under Act No. 104 to obtain the lieu warrant. However, the register of the State’s land office had failed to fulfill his ministerial duty and had not issued the lieu warrant until 1917. Accordingly, the Hyams heirs had the same rights as if the warrant had been issued when applied for in 1888.
 

 Hyams II,
 
 which is more relevant to this matter, was another mandamus proceeding brought by the Hyams heirs after the State refused applications for patents to locate the lieu warrant on specified lands. The heirs also sought injunctive relief to prevent the State from granting mineral leases before issuance of the patents. Patent applications made in 1917, 1918, 1919, and again in 1938 were all rejected. The main issue on appeal concerned the State’s claim that the action to enforce the lieu warrant was a personal action that had prescribed. Noting that a lieu warrant “contemplates a future location of the warrant on lands of like character | ^belonging to the State without designating any particular time within which it can be done,” the court rejected the State’s prescription argument.
 
 Hyams II,
 
 197 La. at 437, 1 So.2d at 686. Relevant to the case
 
 sub judice,
 
 the State also argued that the patents could not be issued without a reservation of the mineral rights as required by Art. IV, § 2. The court rejected this argument. Concluding that the constitutional provision had prospective effect only, the court explained:
 

 There is no language used therein to indicate that this constitutional provision is to apply to transfers of property under lieu warrants previously issued under Act No. 104 of 1888. In our opinion it deals with future sales of land made by the State and there is nothing contained therein to suggest that it was intended to destroy or impair a contract previously entered into by the State.
 

 Hyams II,
 
 197 La. at 438, 1 So.2d at 686.
 

 Justiss’s reliance on
 
 Hyams II
 
 appears well founded. The opinion suggests that lieu warrants issued under the authority of Act No. 104 create a contractual right that cannot by impaired by Art. IV, § 2. The
 
 Hyams II
 
 holding was reiterated again by the supreme court in support of its decision in
 
 Schwing Lumber & Shingle Co. v. Board of Com’rs of the Atchafalaya Basin,
 
 200 La. 1049, 9 So.2d 409 (La.1942), in which ownership of mineral rights was disputed between the plaintiff and the State. Schwing had purchased the land from a private party in 1930, at which time the levee district executed a quitclaim deed. The levee district had previously entered a contract to sell the property in 1900, and received the purchase price in 1904 from the original purchasers. However, it argued that title did not divest from the State until execution of the quitclaim deed in 1930, after Art. IV, § 2 was in effect. The court rejected the Levee District’s argument and Rfound that the quitclaim deed merely confirmed and made certain the title to both the land and minerals that had already vested in the original purchasers, and then to Schwing, long before adoption of the Constitution of 1921.
 

 
 *512
 
 Though
 
 Schwing, supra,
 
 cites
 
 Hyams II
 
 as support for its finding that the State did not own the mineral rights, the evidence in
 
 Schwing
 
 established that the State through the levee district had sold the specific property at issue years before Art. IV, § 2 was enacted in 1921. Even in
 
 Hyams II,
 
 the heirs had applied for patents to locate the lieu warrant on specifically identified land three times before adoption of the Constitution of 1921. It was the State’s failure to act on the patent applications that delayed issuance until after 1921. Because the heirs had done all the law required them to do to obtain the patents, the supreme court was correct in ordering them issued without reservation of mineral rights by the State. Considering that the sale and transfer of the land in
 
 Schwing, supra,
 
 occurred years before 1921, that case does little to advance Jus-tiss’s position. Moreover, the specific facts of
 
 Hyams II, supra,
 
 and the supreme court’s subsequent opinions on similar matters weigh in the defendants’ favor.
 

 Douglas v. State,
 
 208 La. 650, 23 So.2d 279 (La.1945), is another matter stemming from the same facts as
 
 Hyams I
 
 and
 
 Hyams II.
 
 After issuance of the lieu warrant in 1917, Judith Hyams Douglas applied for a patent in 1919 to locate part of the warrant on land in Union Parish. No action was taken until she renewed her application in 1939, at which time her application was rejected. The State had withdrawn the land from sale and had granted a mineral lease in favor of Standard Oil Company of Louisiana. | iqF oil owing abandonment of the lease by Standard Oil and the decisions in
 
 Hyams I, supra,
 
 and
 
 Hyams II, supra,
 
 the State issued Douglas’s patent. Claiming that the property became hers when she filed for the patent in 1919, or at least when she renewed her application in 1939, Douglas filed suit to recover the cash bonus received by the State for the mineral lease. The supreme court agreed with Douglas and explained:
 

 [W]hen the plaintiff applied for the patent in 1919 and renewed the same in 1939, her right thereto became perfect and complete and she thereby acquired a vested right to the property the same as if the patent had issued, entitling her to all revenues derived therefrom.
 

 Douglas,
 
 208 La. at 663, 23 So.2d at 283.
 

 The court focused on the date of the patent application, rather than the date of the lieu warrant, as the date when Douglas acquired vested rights in the property. Though the court referred to dates both in 1919 and 1939, we can reasonably deduce that Douglas’s rights vested upon her initial patent application in 1919, prior to adoption of the 1921 Constitution, thereby entitling her rather than the State to ownership of the mineral rights and the bonus paid to the State for the mineral lease. The supreme court’s focus on the patent date can be read as a clarification of its earlier decision in
 
 Hyams II
 
 wherein the court concluded that the 1921 Constitution would not apply to “transfers under lieu warrants previously issued” under Act No. 104. In both
 
 Hyams II
 
 and
 
 Douglas, supra,
 
 the Hyams heirs had applied for patents as to specifically identified property prior to the enactment of the 1921 Constitution. But for the State’s failure to act and wrongful denial of the patent applications, the “transfers under lieu warrants” would have occurred |,, prior to adoption of the 1921 Constitution. The plaintiffs’ property rights vested at the time of their patent applications in 1917, 1918, and 1919, entitling them to both the surface of the land and the mineral rights attendant thereto.
 

 In
 
 Lewis v. State,
 
 244 La. 1039, 156 So.2d 431 (La.1963), the supreme court reversed a judgment that had decreed the
 
 *513
 
 plaintiff owner of mineral rights to property for which a patent had issued in 1943. A defective patent had been issued by the State in 1862. The holders of the defective patent did not apply for the lieu warrant authorized by Act 104 until 1942. Shortly after the lieu warrant was issued, its holder applied for and obtained a patent locating the warrant on land in Calca-sieu Parish. A dispute then arose as to ownership of the mineral rights. The State claimed that because the patent had not issued until 1948, it owned the mineral rights by application of Art. IV, § 2. The plaintiff claimed that constitutional provision did not apply because her rights accrued from Act 104, which authorized the lieu warrant as a remedy for defective patents. In reliance on
 
 Hyams I, supra,
 
 and
 
 Hyams II, supra,
 
 the appellate court reasoned that the property for which the patent had issued was delivered in final consummation of the defective 1862 sale and in fulfillment of the obligations assumed by the State when it issued the lieu warrant under the authority of Act 104. The supreme court rejected this reasoning.
 

 The supreme court explained that the only events that occurred prior to 1921 were the issuance of the defective patent in 1862 and the passage of Act 104. Neither of these events gave or vested any rights in connection |1gwith the land at issue. Addressing Act 104, the court explained that it merely authorized the State’s land office “to cancel a defective patent and issue a warrant locatable on other state lands of the same class.”
 
 Lewis,
 
 244 La. at 1045, 156 So.2d at 433. Act 104 contemplated specific action by the holder of the defective patent to achieve a vesting of rights. The court concluded that Art. IV, § 2 applied to the conveyance at issue where no action had been taken by the holder of the defective patent until 1942. The court stated that Article IV, § 2 is “mandatory” and explained:
 

 It applies to all sales of land, whereby the state divests itself of title, with one exception: the redemption of property adjudicated to the state for taxes.
 
 Had it been intended to except sales under Act 101 of1888, the exception also would have been formally expressed.
 

 (Emphasis added.)
 
 Lewis,
 
 244 La. at 1048, 156 So.2d at 434.
 

 The
 
 Lewis
 
 opinion clarifies that there is no exception for sales or transfers of land under Act 104 of 1888 in La. Const. 1921, Art. IV, § 2. This appears in conflict with the
 
 Hyams II
 
 conclusion that Art. IV, § 2 applied to future sales of land and did not apply to property transferred under lieu warrants issued under Act 104. Both
 
 Hyams II
 
 and
 
 Lewis
 
 concern sales that resulted from the passage of Act 104 and the lieu warrants issued under the authority of that act. The seemingly contrary pronouncements in
 
 Hyams II
 
 and
 
 Lewis
 
 regarding the applicability of Art. IV, § 2 to sales stemming from Act 104 can be reconciled based on when the sale or transfer of land under the lieu warrants occurred. The facts of these cases show that no sale or transfer occurred until the holder of the lieu warrant applied for a patent on a specifically identified parcel of land. In
 
 Hyams II,
 
 patent applications were made in 1917, 1918, and 1919, all prior to enactment of the 1921 | ^Constitution. It was the State’s failure to act that prevented issuance of the patents prior to 1921. Thus, the court correctly determined that the property would be conveyed without reservation of mineral rights by the State. The rights of the Hyams heirs vested prior to 1921, when the initial patent applications were made to locate the lieu warrant on specific lands. In
 
 Lewis, supra,
 
 the fact that the lieu warrant had been issued under the authority of Act 104 was of no moment. Because the patent application had not been made
 
 *514
 
 until many years past 1921, the court correctly found that the State retained the mineral rights by operation of Art. IV, § 2. In both cases, the mere issuance of the lieu warrant conveyed no property rights regardless of whether issuance occurred pri- or to 1921 or after. Finding that property rights vest at the time of the patent application is the very approach taken by the supreme court in
 
 Douglas, supra,
 
 and is considered by this court to be the correct approach.
 

 Further support for our reasoning is found in
 
 Standard Oil Company of Louisiana v. Allison,
 
 196 La. 838, 200 So. 273 (La.1941), another concursus proceeding to determine entitlement to proceeds from the sale of oil. After receiving land from the State in 1895, a levee district sold the land to a private party. However, no formal certificates of conveyance were issued at the time of the sale. It was not until after enactment of Art. IV, § 2 that certificates of conveyance covering all the land sold were issued. The State then claimed that it owned the mineral rights, but the court rejected the State’s claim. The court reasoned that the failure to issue the conveyance certificates was the fault of the state officials who failed to perform their | ^ministerial duties. Even though the certificates of conveyance were not issued until after 1921, the court found that the levee district had full power and authority to contract and to sell lands it owned and that it had done so in 1895, thereby conveying rights and interests in the land to the purchasers. The court noted that this was not a case where the parties through their own volition or indifference waited until after the adoption of the 1921 Constitution to demand issuance of the certificates of conveyance by the state officials.
 

 In light of the foregoing cases, we find that issuance of a lieu warrant did not convey rights to any specific land. It simply authorized the holder, his heirs, or assignees to find at some indeterminate time in the future other state-owned lands of the same class for which a patent could be granted. To acquire vested property rights, the holder of the lieu warrant had to locate available land and obtain the issuance of a patent. Until land was specifically identified and a patent sought, the state had full authority to sell its land, to grant mineral leases, and to take any actions permitted a landowner. Where the state failed to act on the patent application as in
 
 Hyams II, supra,
 
 or wrongfully denied the patent application as in
 
 Douglas, supra,
 
 property rights vested when the application was made the same as though the patent had been issued. If the holder of a lieu warrant waited to apply for a patent locating the warrant on specifically identified land until after adoption of the 1921 Constitution, then he obtained a patent subject to the reservation of mineral rights in favor of the State as provided in Art. IV, § 2.
 

 | ifiln this matter, the lieu warrant was granted in 1919. No property rights vested at that time. It was not until January 1935, when Joseph Clements applied for and obtained a patent for Lot 5 in DeSoto Parish, that he obtained property rights to that specific land. By that time, Art. IV, § 2 mandated reservation of the mineral rights on any and all property sold by the State. Accordingly, the mineral rights were reserved to the State by operation of law, and only the surface rights were conveyed to Clements and down the chain of title. We find that Justiss’s reservation of mineral rights as pertaining to Lot 5 had no effect as there were no mineral rights to reserve.
 

 CONCLUSION
 

 For the reasons explained, summary judgment in favor of Justiss is hereby
 
 *515
 
 reversed and vacated. Summary judgment in favor of the defendants is hereby granted, declaring the State of Louisiana to be the owner of 100% of the mineral rights attendant to Lot 5. This matter is remanded for further proceedings to disburse the proceeds deposited in the registry of the court. Costs of this appeal are assessed against Justiss.
 

 REVERSED, RENDERED, and REMANDED.