# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1168

MIDSTATES PETROLEUM, LLC

VERSUS

STATE MINERAL AND ENERGY BOARD OF THE STATE OF
LOUISIANA, ALVIN & LOUISE ALBRITTON MEMORIAL
FUND, LLC, AND ASA PROPERTIES, LP

**********
APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, DOCKET NO. C-2012-1108-B
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE
**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Sylvia R. Cooks, Shannon J. Gremillion and David Kent
Savoie, Judges.

**AFFIRMED.**

James D. "Buddy" Caldwell, Attorney General
Ryan M. Seidemann, Assistant Attorney General
Stephen B. Jones, Assistant Attorney General
Megan K. Terrell, Assistant Attorney General
Ethel S. Graham, Assistant Attorney General
P.O. Box 94005
Baton Rouge, La. 70804-9005
Telephone: (225) 326-6085
**ATTORNEYS FOR PLAINTIFF/APPELLANT**
    State Mineral and Energy Board of the State of Louisiana

Jamie Manuel
Mayhall Fondren Blaize
5800 One Perkins Place Dr., Suite 2-B
Baton Rouge, La. 70808
Telephone: (225) 810-4998
**ATTORNEY FOR DEFENDANTS/APPELLEES**
    ASA Properties, L.P., Alvin and Louis Albritton Memorial Fund, L.L.C.

**COOKS, Judge.**

This appeal involves the title to minerals underlying a forty-acre tract of immovable property located in Beauregard Parish. Appellant in this matter argues the trial court erred in granting appellees' motion for summary judgment finding appellees were the legal owners of the minerals underlying the subject property. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The underlying facts in this case are not in dispute. In 1858, the State of Louisiana sold a piece of land to John Laidlaw. The State later determined it did not own just title to the land sold to Laidlaw, as the property had previously been sold by the federal government. All parties agree the original sale was for both the land and the minerals underlying the property. In 1888, the State of Louisiana passed Act 104 of 1888, which allowed the State to keep money from the sale of property it did not own and in its place issue a land or lieu warrant. Upon presentation of this lieu warrant at a future date, suitable land would be found to satisfy the previous erroneous sale.

On August 28, 1919, Warrant No. 188 was issued by the State under Act 104 of 1888 to John Laidlaw. The heirs of John Laidlaw assigned their rights under the lieu warrant to Alvin R. Albritton. In 1943, Albritton applied for a patent to satisfy the rights acquired under the lieu warrant. The State Land Office then issued Patent No. 13651 in 1944 to Albritton. However, in the intervening years (after Warrant No. 188 was issued in 1919, but before Patent No. 13651 in 1943) the State passed the 1921 Constitution, which in Section 2, Article 4, contained a prohibition against the sale of mineral rights by the State, providing in pertinent part:

> In all cases the mineral rights on any and all property sold by
> the State shall be reserved, except where the owner or other person

2

having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes.

The State argued any land transferred subsequent to the passage of the 1921 Constitution would be subject to the constitutionally imposed mineral reservation. Thus, the State contends the land acquired by Warrant No. 188 and Patent No. 13651 is subject to the above mineral rights reservation and the ancestors to Alvin Albritton did not, and could not, obtain the mineral rights on the property acquired from the State subsequent to the passage of the 1921 Constitution's prohibition against the sale of mineral rights.

In 2011, the ancestors in title to Alvin Albritton, ASA Properties, L.P., the Alvin & Louise Albritton Memorial Fund, L.L.C., and the Alvin & Louise Albritton Memorial Fund II, L.L.C. (hereafter "the Albrittons"), claiming to be an owner of the undivided interest in and to the minerals in and under the property in question acquired by Warrant No. 188, granted an Oil, Gas and Mineral Lease to MidStates Petroleum Company. However, in August 2012, also claiming to be the owner of the minerals in and under the same land, the State Mineral and Energy Board of the State of Louisiana (hereafter "the State") entered into an operating agreement with MidStates. In late 2011, MidStates drilled a well, which began producing oil and gas on the subject property. Given the confusion over the ownership of the minerals on the property, on December 18, 2012, MidStates filed a Petition for Concursus and deposited all proceeds earned up to that point into the registry of the court.

The present matter came before the trial court on a Motion for Summary Judgment filed June 17, 2013 on behalf of the State, asserting it should be declared the owner of 100% of the oil, gas and mineral rights situated in, on, or under the subject property. The Albrittons filed a cross Motion for Summary Judgment, contending they should be declared owners of the minerals underlying the subject

3

property. The parties filed memoranda in support of their respective positions and a hearing was held. The trial court rendered judgment denying the State's motion for summary judgment and granting the Albritton's motion, providing the following written reasons for judgment:

> The court finds in this instant matter, an obligation was created between the State of Louisiana and the Albritton's ancestor in title, John Laidlaw, in 1858 when the State sold him a tract of land, but could not transfer title. It is uncontested that the mineral rights to said property would have transferred with the surface had the State held title to the property involved in the original sale, so there is no evidence of a reservation made by the State in said sale. Act 104 of 1888 ratified this sale and acted as an acknowledgment of the obligation that existed between the State and John Laidlaw. The act allowed the Albrittons to be issued a lieu warrant in place of the tract of land erroneously sold by the State. Once the lieu warrant was applied for, an obligation was created for the State to issue property "of the same class as that originally entered under" in its place.

> The State obligated itself to transfer a tract of land with minerals in lieu of returning money it had taken in a sale of land it did not own. The court agrees with the decision in *Douglas* [*v. State*, 23 So.2d 279 (La. 1945)] that property rights in a particularized piece of property vested only upon presentment of the lieu warrant; however an obligation or a contractual right to transfer a not-yet-identified tract of property with minerals existed in 1919 on the date the Albrittons were issued a lieu warrant. Because this obligation existed before the 1921 mineral sale prohibition, the prohibition could not impair this existing obligation.

> Louisiana is a civilian state. La.[Civ.Code] Art. 3. Accordingly, this court is not bound by the decision of the Louisiana 2nd circuit Court of Appeal in [*Justiss Oil Co., Inc. v. Louisiana State Mineral Bd.*, 45,212 (La.App. 2 Cir. 4/14/10), 34 So.3d 507, *writ denied*, 10-1066 (La. 9/17/10), 45 So.3d 1044]. While this court has thoroughly reviewed and considered the 2nd Circuit's decision in *Justiss*, it ultimately finds that the Louisiana Supreme Court decision in [*State ex rel. Hyams' Heirs v. Grace*, 197 La. 428, 1 So.2d 683 (La.1941)] presents the proper interpretation of this matter.

> For the aforementioned reasons given, the State's motion for summary judgment is hereby denied and the Albritton's cross motion for summary judgment is hereby granted, finding the Albrittons to be owners of the minerals underlying the subject property.

The State appealed, contending the trial court erred in granting the Albrittons' cross motion for summary judgment.

4

**ANALYSIS**

Summary judgments are reviewed *de novo* on appeal, with the reviewing court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Louisiana Safety Ass'n of Timbermen-Self Insurers Fund v. Louisiana Ins. Guar. Ass'n*, 09-23 (La. 6/26/09), 17 So.3d 350. A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B); *Costello v. Hardy*, 03-1146, p. 8 (La. 1/21/04), 864 So.2d 129, 137.

The Albrittons have maintained, and the trial court ultimately agreed, that the issuance of a land warrant creates a constitutionally protected contractual right to some land with minerals that cannot be impaired by either statute or subsequent constitutional amendment by the State. We find the law, equity and the jurisprudence support this argument. Thus, the trial court did not err in granting summary judgment in favor of the Albrittons.

We find particularly instructive the Albrittons' reference to the United States Supreme Court case of *McGee v. Mathis*, 71 U.S. 143 (1866). In *McGee*, the Arkansas legislature passed an act in 1851 which provided if a private person would drain and levee certain swamp lands, he could take as compensation either the land he improved, or a "scrip," which could be presented at a future date for similar quantity land of the same class and character. The 1851 act further provided that all lands acquired pursuant to the act would be exempt from taxation for a term of ten years.

In 1853, the plaintiff in *McGee* drained and leveed swamp lands. He elected, in accordance with the 1851 act, to take a scrip for his compensation. However, in 1855, before the plaintiff exchanged his scrip for land, the Arkansas legislature passed an act repealing the ten-year tax exemption for lands acquired pursuant to the 1851 act. In 1857, after the plaintiff selected his land, the State demanded he pay taxes on the property. The plaintiff objected to this, and litigation ensued.

The U.S. Supreme Court held the Arkansas legislature's attempt to collect taxes on lands selected pursuant to scrips that were issued prior to the 1855 act which repealed the tax exemption constituted an impairment of existing contractual rights. The supreme court struck down the 1855 act as a nullity, insofar as it repealed the tax exemption for lands acquired by scrips prior to the 1855 act. The court explained:

> The contract of the State was to convey the land for the scrip, and to refrain from taxation for the time specified. Every piece of scrip was a contract between the State and the original holder and his assigns. Now what was the effect of that contract when made? Did it not bind the State to receive the scrip in payment for swamp land, exempted for a limited time from taxation? The scrip, if not receivable for lands, was worthless. *To annul the quality of receivability was to annul the contract. But the exemption of the lands for which it was receivable from taxation was a principal element in its value; and repeal of the exemption was the destruction of this element of value. This was clearly an impairment of the contract. The State could no more change the terms of the contract by changing the stipulated character of the land to be conveyed in satisfaction of the scrip as to liability to taxation, than it could abrogate the contract altogether by refusing to receive the scrip at all in payment for land.*
>
> We are constrained to regard the repeal of the exemption act, so far as it concerns lands paid for, either before or after the repeal, by scrip issued and paid out before repeal, as impairing the contract of the State with the holders of the scrip.

*Id.* at 156-57 (emphasis added).

In accordance with *McGee,* once Warrant No. 188 was issued, the State could not change the terms of the contract by changing the stipulated character of

6

the land, i.e., the removal of the right to the underlying minerals, any more than it could revoke its contract to issue a patent in compensation for the previously issued erroneous title.

The Louisiana Supreme Court in *State ex rel. Hyams' Heirs v. Grace*, 197 La. 428, 1 So.2d 683 (La.1941) (hereafter *Hyams II*), was presented with the same scenario as in this matter. In 1863, Henry Hyams purchased land from the State which it did not have title to, having been previously sold by the United States government. By the time Act No. 104 was passed in 1888 to indemnify the holders of patents for land which the State did not own, Mr. Hyams had died and his children were all minors. Pursuant to Act 104, the executor of Hyams' estate had the erroneous patent canceled in 1888, and filed an application for a lieu warrant. The application was lost for some time, and no action was taken by the State on the warrant application. When Hyams' heirs reached the age of majority, the warrant application was found, and Warrant No. 168 was issued to them on December 28, 1917.

In order to satisfy the entirety of the 400 acre warrant, the Hyams' heirs made three separate patent applications for 40 acres of land each. These applications, for 120 acres of land total, occurred on December 28, 1917, April 22, 1918, and June 3, 1919. These applications were rejected by the State, leading the Hyams' heirs to file a petition of mandamus to compel the issuance of a patent. The ensuing litigation culminated in the Louisiana Supreme Court opinion of *State ex rel. Hyams' Heirs v. Grace*, 173 La. 215, 136 So. 569 (La.1931) (hereafter *Hyams I*).[1]

---

[1] After the 1917 patent application was rejected and the Hyams' heirs filed the petition of mandamus to compel the issuance of a patent, the trial court ruled in favor of the State. That judgment was reversed on appeal and mandamus relief granted. The Louisiana Supreme Court found the executor's compliance with the requirements of Act 104, in conjunction with the State misplacing the application for the lieu warrant, created an equitable contract right as of the date of the original lieu warrant application in 1888. In reaching this holding, the supreme court in *Hyams I* noted, "When the citizen has done everything which the law says he shall do, has paid into the state treasury all that he is required to pay, . . . the state could neither in good conscience nor under the Constitution declare such property a part of the public domain and deprive the entryman of his possession and title." *Id.* at 570 quoting *State ex rel.*

7

On March 23, 1938, the Hyams' heirs made a written application for a patent for the remaining 280 acres left to satisfy Warrant No. 168. The State Land Office refused the application. The Hyams' heirs filed a petition for mandamus to compel the issuance of a patent and an injunction to prevent the State from leasing the mineral rights following and pertaining to the State's denial of the lieu warrant presented for the remaining unfulfilled land from the original 400 acres bought in 1863. The State contended the 1921 Constitution prohibited the sale of minerals by the State. In *Hyams II*, 1 So.2d 683, the Louisiana Supreme Court ultimately concluded the 1921 Constitution's prohibition against the sale of minerals did not apply to this transfer. *Id.*

As noted earlier, the facts in *Hyams II* are, in all relevant aspects, identical to those presented herein. *Hyams II* involved whether the State could invoke Section 2, Article 4 of the 1921 Constitution to prohibit the conveyance of minerals in a patent applied for and issued *after* 1921 to satisfy a lieu warrant applied for and issued under Act 104 *prior* to 1921. The court in *Hyams II*, 1 So.2d at 686, found the heirs were entitled to the minerals along with the land, explaining as follows:

> A constitutional provision should be construed as having a prospective effect only unless it exhibits the intention of its framers to be given a retrospective effect. *Succession of Parham et ux.*, 51 La.Ann. 980, 25 So. 947, 26 So. 700. There is no language used therein to indicate that this constitutional provision is to apply to transfers of property under lieu warrants previously issued under Act No. 104 of 1888. In our opinion it deals with future sales of land made by the State and there is nothing contained therein to suggest that it was intended to destroy or impair a contract previously entered into by the State. The framers of the Constitution cannot be credited with such an intention.

The opinion in *Hyams II* clearly indicates the supreme court viewed lieu warrants as a contract between the State and the holder of the warrant, creating a contractual right in the holder of the warrant for land of like class and character. The *Hyams II* court stated as follows:

---

*Armistead et al. v. Grace*, 129 La. 694, 56 So. 641, 643 (1911). *Hyams I* is instructive because it recognized that a lieu warrant issued pursuant to Act 104 is an enforceable contract right which cannot be impaired.

8

> Article 14 of the Code of Practice provides that *where a contract is to be performed at a future period the obligation growing out of the contract arises at the moment it is made but the right of action growing out of it arises only when the stipulated term has arrived.*

*Id*. at 685-86 (emphasis added).

The trial court based its ruling in this case on the supreme court's holding in *Hyams II* that a lieu warrant issued prior to 1921 is a contractual obligation owed by the State to convey land with minerals, and the passage of the 1921 Constitution *cannot alter or impair that obligation.* To allow the prohibition to impair this contractual right would be a violation of the Contracts Clause of the United States Constitution (article I, § 10, cl. 1) which provides "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts. . ,'" and Louisiana Constitution article I, § 23, which declares "[n]o bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted."

Not surprisingly, the State attempts to distinguish or limit the effect of *Hyams II* to the facts presented herein. First, the State argues, "[a]lthough *Hyams II* was instituted as a suit to compel the issuance of patents for 1938 presentment of a part of a warrant, the case became converted to an examination of prescription and the classification of the disputed rights as real or personal." The Albrittons addressed this contention, noting while the *Hyams II* court discussed the issue of prescription, the assertion that the case was "converted" to a case about prescription is erroneous. As set forth above, the *Hyams II* court specifically held the Hyams heirs' patent should issue pursuant to the pre-1921 lieu warrant without any reservation of minerals due to the fact the issuance of that warrant created a constitutionally protected right for land that must include minerals.

The State also attempts to muddy the waters concerning *Hyams II*, arguing "at least part of the *Hyams II* warrant had been presented to the State prior to the passage of the 1921 Constitution," and it was "unclear how or whether this

distinction factors into any decision by the Court." However, the court in *Hyams II* clearly set forth the "suit was instituted because the Register of Land Office rejected the application made to locate a portion of the warrant of March 23, 1938." *Id*. at 685.

Lastly, the State has contended *Hyams II* "is not about a contract right *per se*. It is about a property right that might have arisen from a contract." We find this argument irrelevant to the matter before us. We agree with the Albrittons that "the fact that the Court in *Hyams II* found a land warrant to be a contract entered into by the State obligating it to convey a real/property right in a yet to be identified tract of land (including minerals), makes no difference to this case." *Hyams II* clearly manifested its belief that "there is nothing contained [in the 1921 constitution's prohibition against mineral sales by the State] to suggest that it was intended to destroy or impair a contract previously entered into by the State." *Id.* at 686.

We have found nothing in the arguments presented by the State to persuade us that the trial court erred in finding the holding in *Hyams II* was controlling in the instant case. The holding in *Hyams II* has never been changed or limited, and is in keeping with the U.S. Supreme Court's opinion in *McGee*.

The State also relies on *Justiss Oil Co. v. Louisiana State Mineral Bd.*, 45,212 (La.App. 2 Cir. 4/14/10), 34 So.3d 507, *writ denied*, 10-1066 (La. 9/17/10), 45 So.3d 1044, in support of its position. In that case, the State erroneously sold forty acres of land to Frank Pierson. In 1919, Pierson had the erroneous 1896 certificate cancelled and obtained Land Warrant No. 187. In 1935, Joseph A. Clements (presumably an heir to Frank Pierson, although the opinion does not specify that fact) presented the warrant to the State Land Office. The State then issued Patent No. 101068.

10

Justiss Oil Company acquired the subject land through a sheriff's sale on September 9, 1981. In 1999, Justiss Oil sold the land to the Louisiana Land Company of Acadiana, but reserved an undivided one-half interest in the oil, gas, and minerals "in, on, or under" the property. Later that same year, Louisiana Land sold the property to the State. In June 2006, the Louisiana State Mineral Board granted a mineral lease to Cypress Energy Corporation, which included the land on which Justiss Oil retained the mineral interest.

The parties stipulated to the claim of title established by Justiss Oil, but the State argued the mineral rights were not conveyed in 1935, but were reserved in favor of the State relying on the prohibition against the sale of mineral rights by the State found in the 1921 Louisiana Constitution. Justiss Oil maintained because the patent was issued pursuant to a pre-1921 lieu warrant, the constitutional prohibition did not apply. The trial court agree with Justiss Oil's argument and granted summary judgment in its favor. The State appealed.

The Second Circuit Court of Appeal reversed the summary judgment in favor of Justiss Oil and granted summary judgment in favor of the State. The court in *Justiss* accepted the State's argument that "property rights vest only when the lieu warrant is presented to obtain a patent for a specifically identified parcel of land." *Id*. at 510.

The Albrittons note the *Justiss* court incorrectly set forth the facts in *Hyams II*, which led to its failure to ultimately follow the clear holding of *Hyams II*. In *Justiss*, 34 So.3d at 512, the second circuit wrote:

> Even in *Hyams II*, the heirs had applied for patents to locate the lieu warrant on specifically identified land three times before adoption of the Constitution of 1921. It was the State's failure to act on the patent applications that delayed issuance until after 1921. Because the heirs had done all the law required them to do to obtain the patents, the supreme court was correct in ordering them issued without reservation of mineral rights by the State. . . Moreover, the specific facts of *Hyams II*, supra, and the supreme court's subsequent opinions on similar matters weigh in the defendants' favor.

11

As set forth previously in this opinion, the three pre-1921 patent applications had nothing to do with the case before the court in *Hyams II*. The supreme court in *Hyams II* clearly stated that "suit was instituted because the Register of Land Office rejected the application made to locate a portion of the warrant of *March 23, 1938*." *Hyams II*, 1 So.2d at 685 (emphasis added).

The trial court, in its written reasons for judgment, also specifically noted the *Justiss* court's erroneous interpretation of the facts in *Hyams II*:

> *Hyams II* was filed as a petition of mandamus to compel the issuance of a patent and an injunction to prevent the state from leasing the mineral rights following and pertaining to the March 23, 1938 denial of the lieu warrant presented for 280 acres of land (or the remaining unfulfilled land from the 400 acres bought in 1863). The State made the argument that the 1921 Constitution prohibited the sale of minerals by the state. *Id.* at 437. The Supreme Court found that the 1921 Constitution's prohibitionto the sale ofminerals did not apply t this transfer. *Id.*
>
> *Specifically not at issue in Hyams II are the three warrant presentments made prior to 1921 that resulted in the granting of patents for three 40 acre lots not connected to the 280 acres in question.* (Emphasis added.)

Our review leads us to agree with the Albrittons and the trial court, that had the *Justiss* court understood *Hyams II* only involved the 1938 patent application, it could not have disregarded its clear holding. The trial court correctly found it was bound to follow the supreme court's holding in *Hyams II*, which it noted "present[ed] the proper interpretation of this matter."

The ultimate holding in *Justiss*, that "[i]f If the holder of a lieu warrant waited to apply for a patent locating the warrant on specifically identified land until after adoption of the 1921 Constitution, then he obtained a patent subject to the reservation of mineral rights in favor of the State as provided in Art. IV, § 2," is simply incorrect and in direct contravention of the supreme court's holding in *Hyams II*. In *Hyams II*, the holder of a pre-1921 lieu warrant did not apply for a patent application until 1938, well after the adoption of the 1921 Constitution. Even though the holder waited until after 1921 to make the patent application, the

12

court in *Hyams II*, found the 1921 Constitution's prohibition could not be applied to prohibit the conveyance of minerals in the resulting patent. This was so because the lieu warrant created a constitutionally protected contract right in the holder. See *McGee v. Mathis*, 71 U.S. 143. The same facts are present in the instant case: the holders of a pre-1921 warrant applied for a patent in 1943. As in *Hyams II*, the 1921 Constitution's prohibition against the sale of mineral rights by the State cannot be applied to deny the warrant holders' constitutionally protected right to the minerals forming part of the subject property. This holding should have applied in *Justiss*, and we find the trial court correctly found the holding in *Hyams II* applicable in this case.

## DECREE

For the foregoing reasons, the judgment of the trial court granting the Albrittons' motion for summary judgment is affirmed. All costs of this appeal are assessed against appellees, the State Mineral and Energy Board of the State of Louisiana.

**AFFIRMED.**